BRYAN CHAMBER OF COMMERCE, APPELLANT, *v.* BOARD OF TAX APPEALS ET AL., APPELLEES.

(No. 359—Decided March 2, 1966.)

*Messrs. Gebhard, Hogue & Dwyer* and *Mr. A. L. Gretick*, for appellant.

*Mr. William B. Saxbe*, attorney general, and *Mr. Jon A. Ziegler*, for appellee Board of Tax Appeals.

*Mr. William H. Weaver*, for appellee Williams County Auditor.

STRAUB, J. This cause came on appeal from a decision of the Board of Tax Appeals denying the applicant's application for tax exemption on real estate. The assistant Attorney General, representing the Board of Tax Appeals, in his brief admits that there is no dispute as to the facts in the transcript of the record taken before the Board of Tax Appeals. The Board of Tax Appeals hereinafter will be referred to as the "board."

Around 1947 the need for greatly expanded recreation facilities was recognized by the civic leaders, religious and commercial concerns, and other interested citizens of Bryan, Ohio. The inadequacy of the recreational facilities in Bryan, Ohio, was unquestionably the result of the failure of the municipal administration of the city to provide such recreational facilities.

In 1948 the Bryan Chamber of Commerce, hereinafter referred to as the "chamber," purchased a 79-acre farm on the outskirts, but within the limits, of the city of Bryan, Ohio; and this acquisition and the acquiring of title thereto by the chamber was for the definite and specific purpose of developing the property into a public recreation park. Thereafter, two professors, who were expert authorities on recreational facility planning, were retained by the chamber to make a survey to determine the recreational needs in the area and for furthering the recreational opportunities for the future for the city of Bryan. In 1952 this survey was completed with plans for the long-range development of the 79 acres into a well-organized recreation park. It was the decision of the chamber and other civic organizations that the development of this recreation park and the future supervision and management of this park was to be entrusted to some civic organization rather than to depend upon the municipal administration of the city of Bryan. About this time there was organized in Bryan, Ohio, the Bryan Community Recreation Council, hereinafter referred to as the "recreation council."

Applicant's Exhibit No. 4, which is the bylaws of the Bryan Community Council, under the title "Purpose" reads as follows:

"The purpose of the Bryan Recreation Council shall be to promote, create, finance, and maintain recreational facilities on the Chamber of Commerce farm, Bryan, Ohio."

The recreation council is an association composed of representatives of educational, religious, industrial and commercial groups along with other civic-minded individuals. The recreation council is an association and holds a public meeting of all members annually, at which its officers are elected. The recreation council, through its officers and members, developed the recreation park by promoting contributions from industrial, commercial, religious and educational associations in the city of Bryan. The recreation council has exclusive voice in the present management and operation of all facilities of the recreation park. Through the efforts of the recreation council the 79 acres has been named and is known as "Recreation Park" and has been developed to become a very complete and adequate recreation facility. In the park there are facilities for every

athletic activity, such as baseball, golf driving range, Little League diamonds, tennis courts, basketball courts, volleyball courts, shuffleboard, horseshoe, badminton, football practice fields; and these facilities are all equipped with lights so that the public at large can make use of these facilities in the evening. Also located in Recreation Park are gardens, a nursery, picnic grounds for all ages, children's playgrounds where the small-tot playgrounds are fenced, a model airplane field, open play areas for kites, etc., equipment for boy scout activities, quonset huts for senior citizens' dances, restrooms and buildings for storage of equipment. Recreation Park is open to all citizens of Bryan, Ohio, and the surrounding community, and there is no charge for any use of the recreational facilities in the park, with the exception of the golf driving range, where a minimal charge of twenty-five to fifty cents per pail of golf balls is assessed.

Recreation Park is a major part of the city park system, and the city maintains the caretaking operations of improving the roads, the mowing of the lawns and the collection of refuse. The city administration also uses Recreation Park for purposes of their recreational program with counselor-directed summer activities.

The recreation council is an association and operates Recreation Park with no view to profit. The record further discloses that the recreation council, in the management of this park, has never had a surplus of money in its treasury at the end of any operating year. The costs of operating and supervising Recreation Park are defrayed through the promotional activities of the recreation council in securing contributions. The recreation council is the holder of a tax-exemption certificate as a charitable organization from the Internal Revenue Service of the federal government. Under the promotion and supervision of Recreation Park by the recreation council, fifty-one acres of the original tract have been developed into facilities for public recreation, and at the time of the application for exemption the balance of twenty-eight acres was farmed out for agricultural purposes.

Since acquiring title to this property in 1948, the chamber has had no voice in the development, management or supervision of Recreation Park. The chamber, as owner and title-

holder of Recreation Park, made application to the Board of Tax Appeals for tax exemption under the provisions of Section 5709.12, Revised Code.

The Board of Tax Appeals, after hearing and upon consideration thereof, denied the application for exemption and made the following finding:

"* * * the applicant is not a charitable institution and therefore is not entitled to exemption from taxation for any of its property under the provisions of Revised Code Section 5709.-12."

The finding further states:

"Based upon the language of Section 5709.12, *supra,* interpreted in the light of Section 2, Article XII of the Ohio Constitution, the findings of the Ohio Supreme Court" (in the case of *Wehrle Foundation* v. *Evatt, Tax Commr.,* 141 Ohio St. 467) "and the natural inequities inherent in this matter, the Board of Tax Appeals hereby denies applicant's request for exemption."

The brief filed in this court by the assistant Attorney General representing the Board of Tax Appeals reads, in part, as follows:

"* * * although the land in issue is being used for a charitable purpose. * * *"

It further reads, in part, as follows:

"* * * even though the land is used for charitable purposes. * * *"

Thus, there is no issue in this case as to the use to which the property in question, Recreation Park, is devoted. This court, therefore, finds that the property involved, known as Recreation Park, at the time of the application for exemption was used exclusively for charitable purposes.

The first stated reason or finding of the board in denying the application for exemption was:

"* * * the applicant is not a charitable institution and therefore is not entitled to exemption from taxation for any of its property under the provisions of Revised Code Section 5709.-12."

Section 5709.12, Revised Code, insofar as it is pertinent, reads as follows:

"* * * Real and tangible personal property belonging to

institutions that is used exclusively for charitable purposes shall be exempt from taxation.''

It can be concluded logically from a reading of this section that there is no provision in the section which requires that the owner of the property involved, the applicant, must be a charitable institution. It should be presumed that the Legislature used language contained in the statute advisably and intelligently and expressed its intent by the use of the words found in the statute. Had the Legislature intended that only property belonging to charitable institutions be exempt, that definite intention could have been made unquestionably clear by simply inserting the descriptive word ''charitable'' immediately before the word ''institutions.''

Using simple rules of grammatical construction and examining the language of Section 5709.12, Revised Code, *supra,* we find the legislative intent to be clear and unambiguous.

Analyzing the sentence comprising that portion of such section, and examining the language thereof, there are two dependent clauses:

(1) ''belonging to institutions''

(2) ''that is used exclusively for charitable purposes.''

In sentence construction a dependent clause must modify or is dependent upon some part of the main clause. There is no issue and there can be no question that the first dependent clause ''belonging to institutions'' modifies the noun, ''property.'' The second dependent verbal phrase ''that is used exclusively for charitable purposes'' must necessarily refer to the previous noun in the section, ''property,'' which noun is singular and is the only singular noun in the section, which this phrase could possibly modify. It should be noticed that the second noun in the section, ''institutions,'' is a plural noun and that the verb ''is used,'' being singular in number, could not by any correct rule of grammar modify or be dependent on a plural noun. The subject of the main verb ''shall be exempt'' is the noun ''property,'' since property is the only thing which can be exempt from taxation and *property can be exempt only when the property sought to be exempt is used exclusively for charitable purposes.*

However, the assistant Attorney General, representing the

board, maintains that the recodification committee in 1953, in recodifying former Section 5353 of the General Code, engaged in legislating by adding the two words "that is" as found in the new Section 5709.12, Revised Code. Section 5353, General Code, as amended by the Legislature in 1945, insofar as is pertinent, read:

"* * * Real and tangible personal property belonging to institutions used exclusively for charitable purposes, shall be exempt from taxation."

Counsel for the board then contend that Section 5709.12, Revised Code, must be construed as a restatement of the law in existence prior to the recodification, and that under the provisions of Section 5353, General Code, to be entitled to tax exemption on property belonging to it, an institution must be "used exclusively for charitable purposes."

Unquestionably, no other class of litigation has pre-empted the time and attention of the courts in the state of Ohio more than has the question of tax exemptions for various institutions. From a very exhaustive examination of these many decisions of the Supreme Court of Ohio on the question of tax exemptions, this court is of the unaminous opinion that the Bryan Chamber of Commerce is an institution which is entitled to tax exemption on its property known as Recreation Park, and that the provisions of Section 5353, General Code, and Section 5709.12, Revised Code, do not require that the institution entitled to an exemption be exclusively a charitable organization.

The first important case on tax exemptions in Ohio, and the case which has been referred to on numerous occasions in later cases, is *Gerke, Treas.,* v. *Purcell,* 25 Ohio St. 229, which was decided by the Supreme Court of Ohio in 1874. In this case the title to the property involved was held in trust by the Archbishop of the Roman Catholic Church in Cincinnati, Ohio, and the property sought to be exempt from taxation consisted of places of worship, churches, schools, playgrounds and the parsonages or residences of the clergy of the Roman Catholic Church. The opinion in this case by Judge White points out that prior to 1851 the matter of tax exemption was exclusively within the discretion of the General Assembly. However, in the

Constitution of the state of Ohio as adopted in 1851 it was provided in Section 2 of Article XII, insofar as is pertinent, as follows:

"Laws shall be passed, taxing, * * * all real and personal property, * * * but burying grounds, public school houses, houses used exclusively for public worship, *institutions of purely public charity,* public property used exclusively for any public purpose, * * * may, by general laws, be exempted from taxation; * * *." (Emphasis ours.)

The Legislature of the state of Ohio, pursuant to this constitutional provision, in 1852, passed the original tax-exemption statute (50 Ohio Laws 135) which reads in part (at page 137):

"All buildings belonging to institutions of purely public charity, together with the land actually occupied by such institutions not leased or otherwise used with a view to profit; * * *" shall be exempt from taxation.

It must be borne in mind that the constitutional provision of 1851 and the statute of 1852 in Ohio were very similar and in most instances identical with the constitutional and statutory provisions on tax exemptions of the other and older jurisdictions in the United States. Further, in the consideration of the *Gerke case* in Ohio the Supreme Court had the benefit of many earlier decisions of the courts of these older states on the question of tax exemptions.

Under the provisions of the Constitution of 1851, *supra,* and the statute enacted in 1852, *supra,* Judge White, in the opinion in *Gerke, Treas.,* v. *Purcell,* 25 Ohio St. 229, stated as follows, at page 242:

"With the exception of a limited amount of personal property, which is authorized to be allowed to individuals, the property that may be exempted from taxation depends either upon its ownership, or the use to which it is applied, or upon both.

"The exemption of 'burying-grounds,' 'houses used exclusively for public worship,' and 'institutions of purely public charity,' does not depend on the ownership of the property. The uses that such property subserves, constitute the grounds for its exemption. The burying-grounds may be either public or private; but the houses of worship must be houses of *public*

worship, and the institutions of charity must be of a charity that is *purely public.*"

As that case will be referred to in later authorities cited, it might be well to point out that the above language by Judge White was the authority for the exemption of property at that time and that exemptions of property from taxation depended:

(1) either upon its ownership, or
(2) the use to which it is applied, or
(3) upon both.

Further, the language of Judge White quoted above, with reference to tax exemption of *institutions of purely public charity*, established the principle that the exemption does not depend on the ownership of or the title to the property, but the controlling factor in determining the exemption is whether or not the *property is used* exclusively for charitable purposes.

We quote further from *Gerke, Treas., v. Purcell,* 25 Ohio St. 229, at 244:

"It is to be observed that the duty to tax as well as the authority to exempt from taxation, has reference to property. It is property alone that is required to be taxed, and property also is the object of the authorized exemptions.

"Two questions arise on this branch of the subject: 1. Whether the charity to which the property is devoted is purely public; 2. Whether it is competent for the legislature to recognize these schools, as they are established and carried on, as institutions within the meaning of the constitutional provision.

"As to the first of these questions, it seems to us the charity is to be regarded as purely public. * * *"

The importance of the decision in the *Gerke case,* as far as it pertains to our case under consideration, is the language of Judge White, in his opinion, found on page 245, which reads as follows:

"Laying out of view the nature of the organization by which the charity is administered, the property in question stands on the same footing as the property devoted to the support of colleges and other higher institutions of learning not founded by the state. All of these institutions stand, as respects their claim to exemption from taxation under the constitution, on the ground of their being institutions of purely public charity. *If property is appropriated to the support of a charity which is*

*purely public, we see no good reason why the legislature may not exempt it from taxation, without reference to the manner in which the legal title is held, and without regard to the form or character of the organization adopted to administer the charity. * * *''* (Emphasis ours.)

Also appropriate to the issue in our case is the following language of Judge White in the *Gerke case* found in his opinion, on page 247:

*''* * * But the condition has marked significance when applied to private property, which is often used for the purposes of education, like property in ordinary business, as a means of profit. But when private property is appropriated to the support of education for the benefit of the public without any view to profit, it constitutes a charity which is purely public. When the charity is public, the exclusion of all idea of private gain or profit is equivalent, in effect, to the force of 'purely' as applied to public charity in the constitution.''* (Emphasis ours.)

By unaminous decision, the judges of the Supreme Court of Ohio held in the *Gerke case* that the houses of worship, the churches, the schools, and the playgrounds were exempt from taxation, but they further found that the parsonages or residences of the clergy were not being used for public charitable purposes and, therefore, were not exempt. The principles of tax exemption in Ohio as expressed in the *Gerke case* are so fundamental to the issue involved in our *Bryan case* that two paragraphs of the syllabus in the *Gerke case* are hereby repeated for emphasis:

''6. The constitution, in directing the levying of taxes and in authorizing exemptions from taxation, has reference to property, and the uses to which it is applied; and where property is appropriated to the support of a charity which is purely public, the legislature may exempt it from taxation, without reference to the manner in which the title is held, and without regard to the form or character of the organization adopted to administer the charity.''

''8. In the description of the property exempted from taxation in section 3 of the tax law, as amended March 21, 1864, the word public, as therein applied to school-houses, colleges, academies, and other institutions of learning, is descriptive of the uses to which the property is devoted. The schools and instruc-

tion which the property is used to support must be for the benefit of the public; and when private property is thus appropriated without any view to profit, it constitutes a 'purely public charity' within the meaning of the constitutional provision.''

In 1915 the Supreme Court of Ohio affirmed the *Gerke case* in *Myers, Treas.*, v. *Benjamin Rose Institute*, 92 Ohio St. 238. There the property sought to be exempt from taxation consisted of an endowment fund held in the name of The Citizens Savings & Trust Company, as trustee. At the time the application for tax exemption was made the endowment fund was merely being held by the trustee and such fund was to be used later for the many charitable purposes designated in the will. There was no question as to The Benjamin Rose Institute being a very commendable charitable institution.

Quoting from the opinion by Judge Johnson in this case, on page 242, we find the following language:

''In the first place, it has been constantly recognized and held by this court that the phrase 'institutions of purely public charity' is a broad one, and that the term may be applied by the legislature to the organization which administers the charity or to the establishment where its operations are carried on.

''In *Gerke, etc.*, v. *Purcell*, 25 Ohio St. 242, it is said: 'The property that may be exempted from taxation depends either upon its ownership, or the use to which it is applied, or upon both.' And at page 244: 'The term ''institution'' is sometimes used as descriptive of the establishment or place where the business or operations of a society or association is carried on; at other times it is used to designate the organized body. * * * As used in the constitutional provision, the term may be applied by legislation in either sense.' ''

We further quote from the opinion, on page 250, as follows:

''* * * It has been the policy of this state, as well as of the other states, to encourage institutions of this nature and to give full recognition to the public benefit that they confer. Their astonishing growth and the extension of their fields of endeavor have been a source of pride and satisfaction to our people. This is so because it is a condition that is peculiar to this country.

''Mr. Bryce in his American Commonwealth, Vol. 2, 481-482, quotes from an address by President Eliot as follows: 'The

successful establishment and support of religious institutions—churches, seminaries, and religious charities—upon a purely voluntary system, is an unprecedented achievement of the American democracy. * * * The endowment of institutions of education, including libraries and museums, by private persons in the United States is a phenomenon without precedent or parallel, and is a legitimate effect of democratic institutions.'

"As already observed, the constitutional provision under inquiry here was amended in September, 1912. For the phrase 'institutions of purely public charity' there is substituted the phrase 'institutions used exclusively for charitable purposes.' Widely different views are entertained concerning this amendment.

"On the one hand, that as now used the word 'institutions' must be given a much more restricted meaning, and that the exemption must be confined to the physical property or establishment which is used for the purposes stated.

"On the other hand, the view in effect is that the purpose of the change was not to restrict but to enlarge the permissive power of the legislature; that the framers of the amendment and the people will be presumed to have used the word 'institution' in view of the well-defined meaning that had been given to the term by the legislature and by the adjudications of this court, and that the intention was to grant the legislature the permissive power to extend exemptions to the property of associations which were not institutions of *purely public* charity, but which nevertheless devoted themselves 'exclusively to charitable purposes,' such as the great fraternal organizations which provide and maintain homes in Ohio for their aged and infirm members, their widows and orphan children. Much of the charitable work of these organizations would have to be done by the state itself but for them.

"This view is also supported by a consideration of the debates of the constitutional convention concerning this change."

The application to have the endowment fund held by the trustee exempt from taxation was denied by the court for the reason that the endowment fund was not, at the time of the application, being used for charitable purposes.

That decision definitely establishes the law in Ohio that, even though the applicant is an "institution used exclusively for charitable purposes," it is not entitled to exemption as an

institution. Further, to be entitled to tax exemption the property involved, belonging to an institution of charity, must be property "that is used exclusively for charitable purposes" at the time of the application.

We now refer to *Benjamin Rose Institute* v. *Myers, Treas.*, 92 Ohio St. 252, L. R. A. 1916D 1170. In that case the property sought to be exempt was certain parcels of real estate, which real estate was being rented out for residential and commercial purposes, and the income and rental therefrom was being used to maintain the charities created by the will. In that case the court affirmed the *Gerke case,* and further, for the first time, the Supreme Court referred to Section 5353, General Code, as passed by the Legislature in 1910. Section 5353, General Code, as enacted in 1910, insofar as it is pertinent, reads:

"* * * and property belonging to institutions of public charity only, shall be exempt from taxation."

We quote from the opinion in the *Rose Institute case,* on page 261, as follows:

"It must be admitted by all interested parties that the charity created by Benjamin Rose does benefit the state in that it affords relief to the aged and needy and to the crippled young, and affords it in such a manner as to protect the beneficiary from the loss of self-respect. The testator did render a distinct public service in devoting his immense fortune to this purpose and did possibly render to the state a fair equivalent for the release of his estate from taxation. In view of the peculiar merit of this charity we are disposed to relax to some extent the rule of construction established in the case of *Cincinnati College* v. *The State, supra* [19 Ohio 110], the second proposition of which case reads: 'All laws exempting any of the property in the state from taxation, being in derogation of equal rights, should be construed strictly.' "

The real importance of the principles laid down in *Benjamin Rose Institute* v. *Myers, Treas.,* 92 Ohio St. 252, is found on page 266, and reads as follows:

"We gather from these two cases, as well as from the several Ohio cases, these two general and controlling rules of interpretation:

"1. It is the use of the property which renders it exempt or nonexempt, not the use of the income derived from it.

"2. The exemption is not a release *in personam* but a re-

lease *in rem,* and the *res* to which the release applies must be found and identified by the officer or no exemption can be recognized."

Here again it was held by the court that the income received by a charitable organization for the renting and leasing out of residential and commercial property was not exempt from taxation for the reason that the income from the properties held in the charitable trust was not, at the time the application was made, being used for charitable purposes.

As stated in *Myers, Treas.,* v. *Benjamin Rose Institute,* 92 Ohio St. 238, Section 2, Article XII of the Constitution of the state of Ohio, was amended in 1912 by substituting the phrase "institutions used exclusively for charitable purposes" in place of the former phrase "institutions of purely public charity." This is the first time this exact language, "institutions used exclusively for charitable purposes," was used in Ohio. Pursuant to this constitutional amendment in 1912 the Legislature, in 1923, amended former Section 5353, General Code, to read as follows insofar as is pertinent (110 Ohio Laws 77):

"* * * and property belonging to institutions used exclusively for charitable purposes shall be exempt from taxation."

In February 1927, the Supreme Court of Ohio decided the case of *Jones, Treas.,* v. *Conn,* 116 Ohio St. 1, which case has been cited many times and is known as "The Marsh Foundation Case." The issue in that case was whether the personal property belonging to the charitable trust estate was taxable for the years 1922 and 1923, during the period *before* any charity was being dispensed. The opinion by Judge Allen, on page 9, reaffirms the rule in Ohio as to tax exemptions as established in the *Gerke case, supra, Myers* v. *Benjamin Rose Institute, supra,* and *Benjamin Rose Institute* v. *Myers, supra.*

Judge Allen's opinion in *Jones, Treas.,* v. *Conn,* 116 Ohio St. 1, on page 10, reads as follows:

"* * * In 1912 the Constitution was amended, as above shown, to exempt institutions 'used exclusively for charitable purposes.' This amendment no doubt did, as defendants in error contend, enable the Legislature to exempt from taxation the property of institutions of charity not purely public (speech of Mr. John Winn in offering the amendment, Volume 2, Ohio Constitutional Convention 1912, p. 1880), *but it also emphasized*

the use of the property, and changed the emphasis from the ownership thereof to the manner of its use. Furthermore, when the amendment employed the word 'exclusively,' it placed as narrow construction upon the meaning of the clause as was possible; for, as pointed out in Zollman on Charities, p. 473, 'Property or buildings might actually be used for charitable purposes and yet not be used exclusively.' The amendment of 1918 which added a provision as to taxation of real estate and the mortgage or debt secured thereby in no way altered or affected the phrase of the Constitution here involved. Hence it is the use of the property and not the ownership which decides the question, and the exemption must depend upon its actual and exclusive devotion to the work of the institution. * * *'' (Emphasis ours.)

Here again, in that case, there being no question that the Marsh Foundation was a very commendable charitable institution, the court held that the personal property belonging to the trust estate for the period before any charity was being dispensed was not exempt from taxation for the reason that it was not being used during that period for charitable purposes.

In 1940, the Supreme Court of Ohio had for consideration the case of American Issue Publishing Co. v. Evatt, Tax Commr.. 137 Ohio St. 264. The publishing company seeking tax exemption was a corporation in Ohio and was under the sponsorship and actual control of the Anti-Saloon League of America. The publishing company's sole function was to print literature wholly for the purpose of temperance education under the sponsorship of the Anti-Saloon League. Profits derived by the publishing company from these activities were devoted to providing additional equipment and increasing facilities to promote temperance education. The application for exemption from taxes by the publishing company was for both real and personal property. Although the publishing company was a corporation for profit, not one penny of profit was ever paid to a shareholder.

On page 266, in the opinion, the court defined the word ''charity'' as follows:

'' 'Charity' has been broadly defined as that which benefits mankind and betters its condition. * * *''

In a unanimous per curiam opinion the court held that the

publishing company was an institution used exclusively for charitable purposes within the contemplation of the Constitution and Section 5353, General Code, and that its real and personal property was, therefore, not taxable. That case is cited in this opinion to indicate the beginning of a liberalizing trend in the law involving tax exemptions.

One year later the Supreme Court of Ohio had before it the case of *Zindorf* v. *Otterbein Press,* 138 Ohio St. 287. The Otterbein Press was a corporation not for profit and was the official publishing organ of the United Brethren Church. The purpose of The Otterbein Press was to publish religious periodicals and other works as may conduce to the general benefit of the United Brethren Church. However, the printing facilities of The Otterbein Press were also devoted to other commercial printing enterprises to the extent that two-thirds of its gross income was derived from commercial work independent of the religious publications. The court held in that case that, since the property of The Otterbein Press was not being used exclusively for charitable purposes, such property was not entitled to be exempt from taxation. The opinion in the case, written by Judge Edward S. Matthias and concurred in by the entire court, on page 291, states:

"The *use of property exclusively for charitable purposes* is the criterion of exemption thereof from taxation. * * *" (Emphasis ours.)

That case, as those cited previously in this opinion, demonstrates that in the interpretation of Section 5353 of the General Code the courts have consistently applied the phrase "used exclusively for charitable purposes" to the word "property" in the section and not to the word "institutions." In other words, the principle has been established by this line of decisions that it is the use of the property sought to be exempt and not the ownership thereof that is the significant factor in determining tax exemption.

The case of *Incorporated Trustees of The Gospel Worker Society* v. *Evatt, Tax Commr.,* 140 Ohio St. 185, was considered by the Supreme Court of Ohio in 1942. The Gospel Herald had a circulation of about fifteen thousand per week which was sold at three different subscription prices. The net proceeds from the publication of The Gospel Herald were used to finance

charitable activities of the Gospel Worker Society. Application for tax exemption by the Gospel Worker Society was made under the provisions of Section 5353, General Code. In the opinion of the court (through Turner, J.), *Jones* v. *Conn, supra, Zindorf* v. *Otterbein Press, supra,* and *American Issue Publishing Co.* v. *Evatt, supra,* were considered by the court, and, on page 189 in the opinion we find these words:

"* * * under the present law, the test is the *present use* of the property rather than the ultimate use of the proceeds."

In a four-to-three decision by the Supreme Court of Ohio, the finding of the Board of Tax Appeals, denying the tax exemption to the Gospel Worker Society, was held reasonable and lawful.

Referring now to the case under consideration of this court, *Bryan Chamber of Commerce* v. *Board of Tax Appeals,* one of the grounds or reasons of the Board of Tax Appeals in denying exemption to the Bryan Chamber of Commerce reads as follows:

"Based upon * * * the findings of the Ohio Supreme Court" (in the case of *Wehrle Foundation* v. *Evatt, Tax Commr.,* 141 Ohio St. 467) "* * * the Board of Tax Appeals hereby denies applicant's request for exemption."

A repeated examination and perusal of the *Wehrle case, supra,* does not convince this court that that case, as decided by the Supreme Court, establishes in any degree the principle that the owner and titleholder of a property sought to be exempt from taxation must be an institution used exclusively for charitable purposes.

The facts in *Wehrle Foundation* v. *Evatt, Tax Commr.,* 141 Ohio St. 467, are as follows:

The Wehrle Foundation was a nonprofit corporation formed for charitable purposes to extend financial or other aid or assistance to certain organizations, whether incorporated or not, as are operated for religious, charitable, scientific, literary or educational purposes or for the prevention of cruelty to children or animals. An application for exemption of personal property belonging to The Wehrle Foundation was made in 1940, and the property sought to be exempt was:

| | |
|---|---|
| Cash in the bank | $ 2,886.04 |
| Investments | 220,937.50 |

There was no issue in the *Wehrle case* as to whether The Wehrle Foundation was a charitable organization. On page 473 in the opinion the court, through Turner, J., speaks as follows:

"We have no doubt that The Wehrle Foundation is a charitable institution devoted to a worthy cause, but under the plain language of the statute *its property was not,* at the time the exemption herein was asked for, *being used exclusively for charitable purposes.* * * *" (Emphasis ours.)

Those words in the opinion in the *Wehrle case* are free from ambiguity, duplicity or uncertainty, and demonstrate conclusively that the words "used exclusively for charitable purposes" as contained in Section 5353, General Code, are applied to the property and not the owner or institution. This interpretation of Section 5353, General Code, is further emphasized in the opinion by Judge Turner, on page 472 in the *Wehrle case,* as follows:

"* * * The language of Section 5353 is clear and unambiguous and authorizes the exemption of 'property *belonging to institutions* used exclusively for charitable purposes.' (Italics ours.) *It is the property rather than the institution which the statute exempts and such property is exempted only when it is used exclusively for charitable purposes.*" (Emphasis ours.)

Further, quoting from the top of page 473, in the opinion by Judge Turner, we find:

"Section 2 of Article XII of the Constitution does authorize the General Assembly to exempt *institutions* used exclusively for charitable purposes. But such section is not self-executing and the extent to which the General Assembly has acted under such authorization is to exempt the *property* belonging to such institutions and not the institutions themselves. * * *"

Paragraph three of the syllabus in the *Wehrle case* is as follows:

"3. The word 'institutions' as used in Section 5353, General Code, is *descriptio personae* and describes the owners or holders whose property may be exempted *provided such property is used exclusively for charitable purposes.*" (Emphasis ours.)

In that paragraph of the syllabus the words "used exclusively for charitable purposes" are applied to the property

sought to be exempt and not to the institutions as the owners or titleholders of the property.

To justify its denial of the application for tax exemption for Recreation Park by the Bryan Chamber of Commerce, the Board of Tax Appeals specifically referred to the findings of the Supreme Court in the *Wehrle case*. Therefore, this court holds that, under the *Wehrle case*, there is no pronouncement by the Supreme Court of Ohio that the words of Section 5353, General Code, "used exclusively for charitable purposes" pertain to or modify the word "institutions." This court further holds that the *Wehrle case* is in complete accord with and follows the decisions of the Supreme Court in *Gerke* v. *Purcell, supra; Myers* v. *Benjamin Rose Institute, supra; Benjamin Rose Institute* v. *Myers, supra; Jones* v. *Conn* (Marsh Foundation), *supra; Zindorf* v. *Otterbein Press, supra*; and *Gospel Worker Society* v. *Evatt, supra*.

The *Wehrle case, supra*, was decided May 12, 1943, and, on June 9, 1943, the Supreme Court released a decision in the case of *Ursuline Academy of Cleveland* v. *Board of Tax Appeals*, 141 Ohio St. 563. On page 568 in that case, the following words therein italicized to make the meaning thereof definite and clear are as follows:

"* * * See *Gerke, Treas.*, v. *Purcell*, 25 Ohio St. 229. However, as pointed out in *Wehrle Foundation* v. *Evatt, Tax Commr., ante*, 467, the extent to which the General Assembly has acted under the Constitution is to exempt *property* belonging to an institution provided such property is *used* exclusively for charitable purposes. * * *"

A case which further manifests the liberalizing trend in the decisions of the Supreme Court of Ohio in tax-exemption cases is *College Preparatory School for Girls* v. *Evatt, Tax Commr.*, 144 Ohio St. 408. This preparatory school for girls was an Ohio corporation not for profit and had title to the property involved. The property sought to be exempt was a playground which had been purchased by the preparatory school for the sum of $20,000, and the property had been improved and developed into a playground in connection with the preparatory school. The Board of Tax Appeals denied the application finding that the applicant was not a charitable institution within the purview and meaning of Section 2, Article

XII of the Ohio Constitution, and Section 5353, General Code. The evidence considered by the Board of Tax Appeals showed that the preparatory school had an enrollment of about 154 students, ten percent of which students attended the school without payment of tuition fees, and that a certain small portion of the other students paid less than the required fees, which fees varied from $100 per year for primary grades to $400 per year for high school students. The record indicated that no profits were made by the school or the corporate titleholder. The Board of Tax Appeals found that the school in question was essentially private in character and, therefore, was not a charitable institution within the meaning of the Constitution and Section 5353, General Code.

In reversing the decision of the Board of Tax Appeals as unreasonable and unlawful, the court, in the opinion by Judge Edward S. Matthias on page 414, said as follows:

"* * * No question is raised that any profit is taken from the operation of this playground, and the record shows that at times other than school hours the grounds are open for use and used by children who live in the neighborhood but do not attend this school. It must be conceded that education is both mental and physical in character. *This playground, used as it is, is a part of the educational institution and is, therefore, exempt from taxation by reason of its use exclusively for charitable purposes.*

"The decision of the Board of Tax Appeals is unreasonable and unlawful and is therefore reversed." (Emphasis ours.)

However, following the decision in the *Preparatory School case, supra,* the Supreme Court, two years later, had for consideration the case of *American Committee of Rabbinical College of Telshe, Inc.,* v. *Board of Tax Appeals,* 148 Ohio St. 654. The holding of the court in that case was to the effect that the property involved was not entitled to be exempt from taxation for the reason that the property was not being used exclusively for a charitable purpose. The record in the case shows that the institution sought to be exempt was used as a seminary for the training of students in Jewish religious and secular subjects. The course of study was limited definitely to a rabbinic course teaching rabbinic subjects to its students. Under the provisions of Section 5353, General Code, the decision of the Board of Tax

Appeals was affirmed by the Supreme Court on the grounds that the property was used as a private denominational school.

Within two years after the decision in the *Rabbinical College case, supra,* the case of *Cleveland Bible College* v. *Board of Tax Appeals,* 151 Ohio St. 258, came before the Supreme Court of Ohio for consideration. There the property sought to be exempt was the property of the Cleveland Bible College which was an institution of learning open to the public generally, offering to the public a general education, and not operating with a view to profit. The college had three programs of study: a four-year program resulting in a degree of Bachelor of Theology; another four-year course resulting in a degree of Bachelor of Sacred Music; and a two-year course which is a junior college course offering a liberal arts education. In the student body were students of seventeen different religious denominations. The purpose of the college was the educating, training, and developing of young men and women for Christian service, and all students were required to pay tuition. The property involved was a three-story, stone building, being used as a dormitory for girl students. The building contained a cafeteria for the students and faculty. On the application for tax exemption, exemption was claimed on the basis that the property was owned by an institution used exclusively for charitable purposes within the meaning of Section 5353 of the General Code. The Board of Tax Appeals denied the tax exemption on the ground that the college was not open to the public and was, therefore, not an institution used exclusively for charitable purposes. The Supreme Court, in a four-to-three decision, reversed the board and, in effect, held that the Bible college, under the provisions of Section 5353, General Code, was entitled to tax exemption on its property. In the concurring opinion by Judge Turner, wherein he quotes from brief of appellant, Cleveland Bible College, we read as follows, on page 261:

" 'Appellant is an institution of learning, open to the public generally, offering to the public a general education, not operating with a view to profit, and it is therefore entitled to tax exemption.' "

In a second concurring opinion by Judge Taft, it is pointed out that the Bible college was a corporation not for profit and was an institution devoted primarily to educating, training,

and equipping young men and women for Christian service and that 21 per cent of its total income was represented by contributions and the remainder came from tuition of $37.50 per quarter and amounts collected for board and room, and that all students paid the stipulated tuition.

In Judge Taft's opinion, on page 269, the language of Judge Johnson in *Myers, Treas.,* v. *Benjamin Rose Institute,* 92 Ohio St. 238, which refers to the reasons for the constitutional amendment of 1912 and which has been previously cited in this present opinion, was reaffirmed.

We quote further from Judge Taft's opinion quoting Judge Allen in the *Bible College case,* at pages 269 and 270, as follows: " '* * * This amendment no doubt did, as defendants in error contend, enable the Legislature to exempt from taxation the property of institutions of charity not purely public (speech of Mr. John Winn in offering the amendment, Volume 2, Ohio Constitutional Convention 1912, p. 1880), *but it also emphasized the use of the property, and changed the emphasis from the ownership thereof to the manner of its use.*' " (Emphasis ours.)

Although the proposition is well settled that statutes involving tax exemptions shall be construed strictly, we find the following paragraph on page 270 in Judge Taft's opinion as follows:

"There do not appear to be any reasons of public policy in this state which would require an unreasonable or strained construction of the words, 'charitable purposes,' in cases involving tax exemption for institutions of learning or religious institutions."

Judge Taft concluded his opinion, at the bottom of page 271, with the following:

"2. If operated without any view to profit, an institution used exclusively for the lawful advancement of education or of religion or of both is an institution used exclusively for charitable purposes, within the meaning of Section 2 of Article XII of the Constitution and of Section 5353, General Code.

"3. By reason of the amendment of Section 2 of Article XII of the Constitution in 1912 and the subsequent change made in Section 5353, General Code, in 1923, it is no longer necessary that such an institution be open generally to the public *in order to have tax exemption of property owned and used by it exclu-*

*sively for lawful educational or religious purposes."* (Emphasis ours.)

These principles, concurred in by the majority of three other judges, established the law in Ohio that an educational institution *operated without any view to profit* even though it restricts the admission thereto, and not being open generally to the public, is *property used exclusively for charitable purposes. Cleveland Bible College* v. *Board of Tax Appeals,* 151 Ohio St. 258, further demonstrates the liberalizing trend of the law in tax-exemption cases.

A case very relevant to the case in Bryan, which we have under consideration, was decided by the Supreme Court in 1952, *Goldman, a Taxpayer,* v. *Robert E. Bentley Post No. 50, American Legion,* 158 Ohio St. 205. In that case, Goldman, a taxpayer of Hamilton County, filed a complaint with the Board of Tax Appeals alleging that on demand the Auditor in Hamilton County had refused to assess for taxes the real estate known as Veterans Memorial Headquarters located at 322 Broadway in the city of Cincinnati. The title to the property involved was held by successor trustees, elected members of the American Legion in Hamilton County and four out of five of whom were members of Robert E. Bentley Post No. 50 of the American Legion. The Memorial Headquarters, the property involved, was built by contributions of citizens of Hamilton County and the purpose of the Memorial Headquarters was "for use and benefit of all service men and women residing in Hamilton county, Ohio, who served honorably in the armed forces of the United States or its allies during the World War." The main occupant of the building was The Robert E. Bentley Post No. 50, where the 1,500 members of the Bentley Post conducted all their meetings, and the facilities of the headquarters were also available at all times without charge to other veterans organizations. The property was also rented out to fraternal organizations for social affairs, to labor unions for meetings, and to persons for purposes such as wedding receptions and parties. After hearing, the Board of Tax Appeals applied the split-exemption provisions of Section 5560, General Code, and determined that for the year 1950, 12 per cent of the property was exempt from taxation, whereas 88 per cent was not. The Supreme Court, in a *per curiam* opinion, on page 206, states as follows:

"The principal question here involved is whether the use of the property in question for meetings of American Legion posts and other patriotic and service organizations of veterans, without charge, is, under the provisions of Section 5353, General Code, a use exclusively for charitable purposes entitling the property to exemption from taxation. A secondary question is whether such property is so exempt where at times its occupancy is temporarily surrendered to other organizations and persons for a service fee.

"The post claims that the use of the property for its dedicated purpose of veterans' headquarters and activities is a charitable use entitling the property to exemption from taxation, and that the incidental use of the property by outside organizations for a service fee is not destructive of such exemption."

To the writer of this opinion it would seem that if the law of Ohio was to the effect that an institution making application for tax exemption must have, under Section 5353, General Code, been an "institution used exclusively for charitable purposes," that the Board of Tax Appeals and the Supreme Court could, without difficulty, have disposed of that case on the ground that the Bentley Post was not an institution used exclusively for charitable purposes. However, the board in that case, as indicated previously, applied the split-exemption provisions and allowed an exemption of 12 per cent of the tax-assessed value of the property. The Supreme Court in that case overruled the decision of the Board of Tax Appeals and held that none of the property of the post under consideration was being used for charitable purposes and modified the order of the board accordingly.

In the *per curiam* opinion (4 members of the court concurring), on page 207, it is stated as follows:

"In determining property to be exempt from taxation, the taxing authorities and the courts are, both by the Constitution and statutes, specifically limited to *properties 'used exclusively for charitable purposes.' * * *"* (Emphasis ours in part.)

The language above quoted in the *Goldman case* reaffirms the decisions previously cited herein and definitely establishes the law construing Section 5353 of the General Code. This is further emphasized on page 208 of the opinion, where we read:

"Under our statute the test of tax exemption is the use to which the property is devoted, and, where a certain use is the requisite of exemption, the exemption is lost if the property is appropriated to other uses. *Cullitan, Pros. Atty.,* v. *Cunningham Sanitarium, supra; In re Complaint of Taxpayers,* 138 Ohio St. 287, 34 N. E. 2d 748; *Incorporated Trustees of Gospel Worker Society* v. *Evatt, Tax Commr., supra.*

"And this is true even though the income or proceeds of the use of the property are devoted to charitable purposes. *Cincinnati College* v. *State, supra; Cleveland Osteopathic Hospital* v. *Zangerle, Aud.,* 153 Ohio St. 222, 91 N. E. 2d 261, and cases cited."

Comparing the facts in the *Goldman case* with the facts in the *Bryan Chamber of Commerce case* at hand, the following quotation from the opinion in the *Goldman case,* at page 208, is exceptionally pertinent:

"In the instant case, the Board of Tax Appeals made a specific finding that the activities of the post 'appear to be no different in scope than those of other fraternal and patriotic lodges and organizations, whose general club rooms and meeting places are not entitled to tax exemptions.' A careful examination of the record substantiates the finding of the Board of Tax Appeals in this respect. The post is a constituent member of the American Legion. The constitution of the post discloses that it is a fraternal and not primarily a charitable organization, although like other fraternal societies it does some charitable work among its members and others. Its activities are largely social and its privileges and facilities are extended to others for similar social activities. In fact, the evidence does not disclose that any particular section or unit of the property is devoted exclusively to charitable uses."

The language above infers that, if the property owned and sought to be exempt by the American Legion was property being devoted exclusively to charitable uses, such property would be exempt. If the American Legion had title to Recreation Park in Bryan, Ohio, as it is now devoted exclusively to charitable uses, and made application for exemption thereof, under the above language, Recreation Park would be entitled to be exempt. This result is manifest regardless of the fact that the American Legion is not primarily a charitable organization.

In 1963 the Supreme Court heard the case of *American Humanist Association, Inc.,* v. *Board of Tax Appeals,* 174 Ohio St. 545. The Humanist Association was a corporation not for profit. Under its articles of incorporation its purposes were to study and extend educational principles and ideals concerning human progress, values and welfare; and, in connection therewith, to publish magazines, books, pamphlets and other forms of literature; and to engage lecturers in order that the purposes of the association might be accomplished. The property sought to be exempt was a building used for the offices and national headquarters of the association, and this building consisted of office, conference and storage rooms and an area where multilithing, addressing and mailing were done. Editorial work on its literature was done in the building, and the affairs of the national organization were there administered. The membership of The American Humanist Association was open to all persons. Some of its literature was sold, some given away and some distributed at cost or less. The association sustained an annual loss of around $4,300, which was made up by special contributions and bequests. The finding of the Board of Tax Appeals, as a result of the hearing, was that the property was not "used exclusively for charitable purposes" within the meaning of Section 5709.12, Revised Code, and the application for exemption was denied. The court in a very brief *per curiam* opinion states as follows:

"This court is of the opinion that the subject property is being used by appellant, a charitable institution, 'exclusively for charitable purposes' and by virtue of Section 2 of Article XII of the Constitution and Section 5709.12, Revised Code, is exempt from taxation.

"The decision of the Board of Tax Appeals is reversed on authority of *American Issue Publishing Co.* v. *Evatt, Tax Commr.,* 137 Ohio St. 264, and *Hubbard Press* v. *Glander, Tax Commr.,* 156 Ohio St. 170."

Here, again, it is important to emphasize the language of the court's opinion, that it is the *property being used by appellant exclusively for charitable purposes* that resulted in the decision of the court overruling the Board of Tax Appeals.

The Court of Appeals for Cuyahoga County, in June 1963,

decided the case of *University Circle Development Foundation* v. *Auditor of Cuyahoga County,* 93 Ohio Law Abs. 65. The University Circle Development Foundation was a nonprofit corporation founded for the purpose of developing the University Circle area in Cleveland as an educational and cultural center. In the University Circle area in Cleveland are located Western Reserve University, Case Institute of Technology, University Hospital, and some thirty other institutions, including the Cleveland Museum of Art, Institute of Music, Cleveland Institute of Art, and several museums of natural history and historical societies. The chief sources of funds of the foundation are from charitable organizations and public subscriptions. The title is in the name of a board of trustees, which board operates the foundation. The foundation purchased two pieces of real property adjacent to the University Circle area. The buildings on the two parcels purchased were razed, and the two parcels were landscaped with shrubbery and flowers. These two pieces of property, since acquisition by the foundation, had been devoted to their ultimate use as public grounds, breathing space and as a part of the campus in University Circle. No income of any kind is derived from either of the two parcels of real estate. The Board of Tax Appeals, following the hearing, ruled with regard to each parcel that the property was not being used exclusively for charitable purposes and denied the application for tax exemption. The Court of Appeals for Cuyahoga County in a unanimous *per curiam* opinion held that the decision was unreasonable and unlawful in each instance and stated as follows, at page 67 (of 93 Ohio Law Abs.):

"* * * The record of testimony and evidence before the board makes it abundantly clear that the land involved in these two appeals has been used in the years stated for its ultimate purpose, namely, campus land for the benefit of these charitable and educational institutions and the public. As such it is entitled to be exempted from real estate tax. See *Western Reserve Academy* v. *Board of Tax Appeals,* 153 Ohio St. 133, 91 N. E. 2d 497; *The College Preparatory School for Girls* v. *Evatt,* 144 Ohio St. 408, 59 N. E. 2d 142; *Trustees of Miami University* v. *Evatt,* 144 Ohio St. 434, 59 N. E. 2d 366; *Kenyon College* v. *Schnebly,* 31 C. C. 150, affirmed 81 Ohio St. 514, 91 N. E. 1138.

"There is no question from the record as to the charitable purpose of the Foundation; there is no question from the record as to the worthy use to which the land is to be put.

"Such activity on the part of private organizations should be supported, encouraged and stimulated within the law. Such unselfish enterprise for the common good is to be highly commended."

The most recent, and one of the most important, pronouncements of the Supreme Court is the case of *Denison Unversity* v. *Board of Tax Appeals*, 2 Ohio St. 2d 17, decided March 31, 1965. Denison University filed applications with the Board of Tax Appeals for tax exemption on three separate parcels of property owned and used by Denison University. The first parcel consisted of a 127-acre farm on which was located a carpenter shop and buildings used for maintenance, repairing of equipment and lumber storage. Most of the area comprising the 127 acres was devoted to agricultural purposes, and the caretaker and his family had a residence located on the farm. The second parcel consisted of the president's home located on the college campus. The third parcel, consisting of eight acres, was the location of Middleton House. Middleton House was used to provide lodging for guests of the University, such as speakers, lecturers and prominent visitors. University conferences and educational seminars were conducted at the Middleton House, and a caretaker and his family lived in part of the house. Application for tax exemption was made for these three parcels under Sections 5709.07 and 5709.12, Revised Code. The Board of Tax Appeals denied the application as to all three parcels. Insofar as the *Denison University case* pertains to our *Bryan case* under consideration, we cite from the opinion by Chief Justice Taft, on page 24, as follows:

"In 1912, the words 'of purely public charity,' as used in the Constitution, were replaced by the words 'used exclusively for charitable purposes.'

"Effective in 1931, this section of the Constitution was amended to read so far as material to a consideration of this case:

" 'No property, taxed according to value, shall be so taxed in excess of one and one-half [later reduced, effective in 1934,

to one] per cent of its true value in money * * * [with specified exceptions where voter or municipal charter approval]. Land and improvements thereon shall be taxed by uniform rule according to value. [Certain specified public] bonds * * * shall be exempt from taxation, and *without limiting the general power,* subject to the provisions of Article I of this Constitution, *to determine the subjects and methods of taxation or exemptions therefrom,* general laws may be passed to exempt burying grounds, public schoolhouses, houses used exclusively for public worship, institutions used exclusively for charitable purposes, and public property used exclusively for any public purpose * * *.' (Emphasis added.)"

The *Denison University case* opinion then discusses the effect of the constitutional amendment of 1931, and Chief Justice Taft quotes from *Ursuline Academy of Cleveland* v. *Board of Tax Appeals,* 141 Ohio St. 563, as follows, on page 25 (of 2 Ohio St. 2d):

" '* * * In * * * *Jones, Treas.,* v. *Conn et al., Trustees,* 116 Ohio St. 1, 10, 155 N. E. 791, Judge Allen pointed out that the 1912 amendment changed the emphasis from ownership of property to the manner of its use [*i. e.,* exclusively for charitable purposes].' "

In pronouncing the effect of the constitutional amendment of 1931, the opinion in the *Denison University case* reads, on page 27, as follows:

"* * * The removal of the specific requirement that 'all' real or personal property be taxed fortifies our conclusion that the people intended, as they stated, to return to the General Assembly as part of its legislative power 'the general power * * * to determine * * * exemptions' from taxation subject only to the limitations set forth in Article I of the Ohio Constitution, the so-called Bill of Rights. There is no suggestion that the claimed exemptions in the instant case would raise any question under that Article I."

The above language and finding of the court on this question is best stated in paragraph three of the syllabus of the *Denison University case,* which reads in part as follows:

"3. By reason of the amendment of Section 2 of Article XII of the Ohio Constitution effective in 1931 the General As-

sembly now has a power to determine exemptions from taxation that is limited only by the provisions of Article I of the Ohio Constitution. * * *''

Other significant language in the opinion in the *Denison University case,* as it pertains to the issues in our *Bryan case,* is contained in the opinion on page 28 and reads:

''So far as the buildings and the 127-acre farm are concerned, the evidence in the record as to their use, Section 5709.07, Revised Code, and our decision in affirming *Kenyon College* v. *Schnebly, supra,* (12 C. C. [N. S.] 1), require their exemption from taxation.

''There is evidence that possibly as much as 20 acres of the farm had been rented and that some farmer had harvested crops of soy beans and alfalfa therefrom. There is no evidence to indicate what, if any, payment Denison received or whether it merely allowed the use of the land to keep it in reasonably good condition. No effort was made by those opposing tax exemption, by cross-examination of Denison's witnesses or otherwise, to show that, to use the words of Section 5709.07, Revised Code, any portion of these 127 acres was 'used with a view to profit.' On such a record, we believe it is unreasonable to find that the whole 127 acres should not be exempted from taxation under Section 5709.07, Revised Code.

''The donation of private property for the support of education for the benefit of the public without any view to profit should always be encouraged. It relieves taxpayers of part of the burden they would otherwise have of providing such education. It would be unreasonable to tax facilities for public education that tax dollars have provided. It would be almost as unreasonable to tax facilities for such education where private donations have provided those facilities and thereby relieved tax dollars from providing them. Our General Assembly has recognized this by enactment of Section 5709.07, Revised Code. Our Constitution no longer inhibits such legislation. This court should not, by narrow and strict construction of statutes such as Section 5709.07, Revised Code, discourage private donations for public education.''

The Supreme Court reversed the decision of the Board of Tax Appeals as to all three parcels and directed the Board of Tax Appeals to allow the tax exemption sought on all three

parcels. However, the opinion points out that in arriving at the decision the court restricted its consideration to Section 5709.07, Revised Code, which has reference to tax exemptions for public institutions of learning, and the court added that in view of the decision of the court it was unnecessary to consider in the *Denison University case* whether Section 5709.12, Revised Code, would also warrant the exemptions claimed in that case.

The decision in the *Denison University case* manifests a continual liberal trend on the part of the Supreme Court to allow tax exemptions to owners of private property which is devoted to charitable uses benefitting the public, when such property is so used *without any view to profit* by the owner.

The opinion in the *Denison University case* cites at least thirty previous Supreme Court decisions pertaining to tax-exemption cases, all involving the same constitutional amendments and statutes, most of which are pertinent to the issues in the *Bryan case* at hand. From a detailed analysis of such tax-exemption decisions as found in the opinion of the *Denison University case,* we hold that had the Supreme Court considered the *Denison case* under the provisions of Section 5709.12, Revised Code, the exemptions sought by Denison University as to all three parcels would, likewise, have been granted under that Section.

The Attorney General, on behalf of the Board of Tax Appeals, argues in the brief filed herein that the *Denison University case* has no application to the *Bryan case* at hand and that paragraph three of the syllabus in the *Denison University case* is not applicable to the provisions of Section 5709.12, Revised Code. One of the findings by the board in denying the application for tax exemption by the chamber was as follows:

"Based upon the language of Section 5709.12, *supra,* interpreted in the light of Section 2, Article XII of the Ohio Constitution, * * *."

With reference to this contention, we believe that, regardless of whether Section 5709.07, Revised Code, or Section 5709.12, Revised Code, is under consideration, paragraph three of the syllabus in the *Denison University case* pronounces the law of this state with reference to any constitutional limitation on the authority of the General Assembly to exempt property. It is a waste of time and effort, after the decision in the *Denison*

*University case,* to argue that the authority of the Legislature is, at this time, in any way limited by the former provisions of the Constitution in Section 2 of Article XII. We hold that, under the authority of the *Denison University case,* as to a consideration of Section 5353, General Code, and Section 5709.12, Revised Code, it is no longer necessary to consider any limitations on the authority of the General Assembly to exempt property except as provided in Article I of the Constitution, the so-called Bill of Rights.

Let us refer to the several cases previously cited in this opinion that comment on the constitutional amendment in 1912, which amendment, in Section 2, Article XII, substituted the words "institutions used exclusively for charitable purposes" for the former words "institutions of purely public charity." *Myers, Treas.,* v. *Benjamin Rose Institute,* 92 Ohio St. 238; *Jones, Treas.,* v. *Conn* (Marsh Foundation), 116 Ohio St. 1; *Cleveland Bible College* v. *Board of Tax Appeals,* 151 Ohio St. 258; *Goldman* v. *Robert E. Bentley Post,* 158 Ohio St. 205; and *Denison University* v. *Board of Tax Appeals,* 2 Ohio St. 2d 17. These same cases point out that the purpose or reason for the constitutional amendment in 1912 was to authorize the General Assembly to enact legislation exempting from taxation properties of the great fraternal organizations of Ohio, which properties were used by these fraternal groups as charitable institutions or homes for the needy, infirm, aged, widowed or orphaned people of their membership. These same cases pointed out that these fraternal orders were not primarily charitable institutions and that their properties which were used for their fraternal functions, meetings and social events were not entitled to be exempt from taxation. In 1923, the General Assembly amended Section 5353, General Code, to read, so far as is pertinent, as follows (110 Ohio Laws 77): "and property belonging to institutions used exclusively for charitable purposes, shall be exempt from taxation." By this amendment of Section 5353, General Code, to insert therein the exact words of the constitutional amendment of 1912, namely, "institutions used exclusively for charitable purposes," the General Assembly certainly must have intended that Section 5353, General Code, would exempt those properties of the fraternal orders which properties were devoted and used exclusively for charitable purposes. This court,

therefore, concludes that under Section 5353, General Code, an institution making application for tax exemption on its property, which property is being used exclusively for charitable purposes, is not required under that section to be primarily a charitable institution. So long as the property sought to be exempt is used exclusively for a charitable purpose with no view to profit by the institution, under Section 5353, General Code, such property is entitled to be exempt. In 1953 when Section 5353, General Code, was recodified and became the present Section 5709.-12, Revised Code, the two words "that is" which were added in Section 5709.12, Revised Code, merely clarified and made more manifest the legislative intent by amending Section 5353, General Code, in 1923.

A further examination of other provisions of Section 5709.12, Revised Code, brings to light a pertinent consideration. In addition to the provisions of Section 5709.12, Revised Code, which have been previously considered here, Section 5709.12, Revised Code, also provides, in part, as follows:

"Lands * * *, * * * leased to the state or any political subdivision for public purposes shall be exempt from taxation."

It would seem, under this provision of Section 5709.12, Revised Code, that this entire issue of tax exemption for Recreation Park in Bryan could have been, and could be, avoided by the simple negotiation of a year-to-year lease for Recreation Park by the chamber of commerce to the city of Bryan for one dollar per year rental. That simple disposition of the issue of tax exemption for Recreation Park by lease indicates further the unreasonableness of the finding of the Board of Tax Appeals denying the exemption.

Is the Chamber of Commerce of Bryan an "institution" within the meaning of Section 5709.12, Revised Code? The term "institution" was defined in *Myers, Treas.,* v. *Benjamin Rose Institute,* 92 Ohio St. 238. Bouvier's Law Dictionary defines "institution" as "An organized society, established either by law or the authority of individuals, for promoting any object, public or social." Webster's New International Dictionary defines institution as (1) an established society or corporation, (2) an establishment or foundation especially of a public character.

Under any of these definitions the chamber of commerce

qualifies as an "institution" under the provisions of Section 5709.12, Revised Code, as construed by this court.

The chamber is, as the record discloses, a corporation not for profit. In addition to its primary purpose to promote commerce, trade and industry, the Articles of Incorporation of the Bryan Chamber of Commerce provide as its purpose as follows: "to promote the general welfare, growth and development of Bryan." Membership in the chamber of commerce is open to the public, either as to organizations or as to individuals, upon payment of the annual dues. The chamber of commerce, not only in Bryan, but throughout the United States, is an institution which is exempt from the payment of federal income taxes based upon its nature as a civic association not for profit. (Section 501 (c) (6), Title 26, U. S. Code.) The efforts of any chamber of commerce in promoting commerce, business and industry result in the building and development of a better community economy which benefits all the people in the area. The chamber of commerce is a public institution devoted in its efforts to benefit the public at large by improving the economy of the area in which it is located. Certainly the chamber is more of a public institution for the benefit of the public than are the great fraternal orders, the American Legion, other service organizations, and civic service clubs, none of which are classified as charitable organizations. All these organizations and associations, incorporated or not, under the law in Ohio are required to pay taxes on their property which is used for their organizational functions, meetings and social affairs. But it would seem if any of these institutions, including the chamber of commerce, have property in their name, which property is devoted exclusively to a charitable use, without a view to profit, such property, under Section 5709.12, Revised Code, should be entitled to be exempt from taxation.

The sole remaining question for consideration concerns the twenty-eight acres in Recreation Park which, up to the time the application for exemption for taxes was made, had not been utilized for recreation and was being leased by the recreation council for agricultural purposes.

The application for exemption was amended at the hearing before the Board of Tax Appeals in order that it be in the alternative (A) covering the entire seventy-nine acres or (B) cover-

ing the fifty-one acres used for public recreational purposes. Inasmuch as the Board of Tax Appeals denied exemption for the fifty-one acres, no reference was made to the board concerning the twenty-eight acres being farmed. The transcript of the testimony taken at the hearing before the Board of Tax Appeals discloses that the recreation council is considing plans for the future recreational development of these twenty-eight acres into additional baseball diamonds and horseback riding areas. The facts in this case are that the entire seventy-nine-acre parcel under title in the name of the chamber was turned over gratuitously to the recreation council for the promotion, development and maintenance of a public recreation park. This amounts to a gratuitous grant from the chamber to the recreation council of the entire seventy-nine-acre parcel. The management, control and maintenance of Recreation Park by the recreation council was to be with no view to profit for either the chamber or the recreation council.

The record shows that, during the four years or so prior to the filing of the application, the recreation council had leased out the twenty-eight acres for agricultural uses and that the recreation council had received a yearly rental therefrom. The record shows further that the money received as rental each year was spent each year by the recreation council to defray the expenses of operating and maintaining the park, and there never was a surplus of funds in the hands of the recreation council at the end of any single year. The record shows further that there are no costs or fees assessed against the public for the use of the facilities in Recreation Park. Therefore, the money received as rental for the twenty-eight acres by the recreation council was immediately devoted to defray the costs of administering the exclusively public charitable purpose of the park. The leasing out of the twenty-eight acres for agricultural purposes was made by the recreation council with no view to profit but with the specific view and purpose of maintaining and operating the park by extending the recreational facilities of the park to the public at large *free from any fees or charges therefor.*

It is the public, alone, which receives the benefit of the use of the park, and it is the public, alone, which receives the benefit *free from any charge or fee.* To tax the twenty-eight-acre

parcel would result in taxing the source of revenue which is used to defray the costs and expenses of operating the park. On such a record, we believe it is unreasonable to find that the whole seventy-nine-acre parcel should not be exempted from taxation. (This last sentence was appropriated from similar language used in the *Denison University case, supra,* on page 28 in the opinion thereof, in the discussion of the question of tax exemption to the 127-acre farm in that case.)

This court holds that the finding of the Board of Tax Appeals is both unreasonable and unlawful and such decision of the board is reversed at costs to the appellees and the cause is remanded with directions to allow the tax exemption sought.

*Decision reversed.*

SMITH, P. J., and BROWN, J., concur.