JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiff Lo-Med Prescription Services ("Lo-Med") appeals from the order of the trial court which determined that it failed to prove with sufficient certainty the damages resulting from defendant Eliza Jennings Group, d.b.a. Eliza Jenning's Home's ("Eliza Jennings"), breach of contract. Eliza Jennings cross-appeals, and challenges the trial court's determination that it breached the Lo-Med contract. For the reasons set forth below, we reverse the order of the trial court insofar as it determined that Eliza Jennings breached the agreement, and we dismiss the Lo-Med appeal as moot.
 {¶ 2} In 1998, HealthRays Pharmacy ("HealthRays"), an institutional pharmacy and Eliza Jennings Home, located on Detroit Road, entered into an agreement for pharmacy services whereby HealthRays was to provide drugs and various pharmaceutical supplies to residents and home health patients of the facility. HealthRays was also to bill the responsible third parties for supplies for patients with Medicaid and other forms of insurance. In relevant part, this agreement provided:
 {¶ 3} "5.1. Initial and Renewal Terms: The term of this Agreement will commence on 1-1, 1999 ("Effective Date") and continue through 12-31, 2002 ("Initial Term"). This agreement shall be automatically extended for two (2) additional three (3) year periods upon the expiration of the Initial Term ("Extension Periods"). Thereafter, this Agreement shall be automatically extended for two (2) additional three (3) year periods upon the expiration of the Initial Term ("Extension Periods"). *Page 4 
 {¶ 4} "U"Upon the expiration of the Extension Periods, this Agreement shall be automatically extended for additional three (3) year terms unless either party will notify the other in writing no less than ninety (90) days prior to the end of any such three (3) year renewal term of its election to extend the term for such additional period: provided however, that no notice of termination from the FACILITY will be valid unless it is current in its payments to the PHARMACY. "At the end of each three (3) year period, the contract extension will be reviewed for ensure that it meets prudent buyer standards, which includes, but is not limited to, the pricing set forth in Section 3.1. At such time, the FACILITY shall have the right to seek and review bids for service from other pharmacies; however, the PHARMACY shall have the right of first refusal to meet any other pharmacy's bid and to continue to provide service to the FACILITY under a new service agreement, if necessary. Any new service agreement shall be no less than three (3) years in length."
 {¶ 5} In early 2002, Eliza Jennings obtained bids from other providers, including a bid from Pharmacy Management Group of Ohio ("PMG"). This bid contained a provision whereby Eliza Jennings was permitted to terminate the agreement upon thirty days notice. On December 27, 2002, Eliza Jennings notified HealthRays of the PMG bid and also indicated that its prices would be equal to or less than HeathRays' prices. HealthRays refused to submit a bid with a matching thirty day termination provision, and asserted that such provision was in direct contravention to Section 5 of the Agreement which set forth three-year terms. Eliza *Page 5 
Jennings maintained that, due to this refusal, it was not obligated to renew the HealthRays Agreement and it entered into an agreement with Pharmacy Management Group.
 {¶ 6} Eliza Jennings continued to purchase pharmaceuticals and pharmaceutical supplies from HealthRays and the parties agreed that HealthRays would bill monthly for its services. In February 2003, the parties agreed that they would no longer bill on a per prescription basis but would instead switch to a per diem cost of $23 for Medicare patients. By June 2003, however, Eliza Jennings stopped purchasing from HealthRays.
 {¶ 7} In September 2003, HealthRays was dissolved and Lo-Med, its operating partner, became its successor in interest. By various contract amendments, Lo-Med's contracts ended as of March 31, 2005.
 {¶ 8} On September 17, 2003, Lo-Med field suit against Eliza Jennings. In its first claim for relief, Lo-Med asserted that Eliza Jennings acted in violation of the "contractual obligations to enter into a new agreement with HealthRays for a term `no less than' three years." In its second claim for relief, Lo-Med alleged that it had failed to make the required monthly payments.
 {¶ 9} Eliza Jennings denied liability and set forth counterclaims for breach of contract and unjust enrichment in which it alleged that HealthRays breached the pricing provision of the agreement because its pricing was not at the median price or *Page 6 
below, and because HealthRays did not provide a competitive analysis of the market.
 {¶ 10} Eliza Jennings moved for summary judgment on plaintiff's breach of contract claims and asserted that the contract language authorized it to obtain bids and granted HealthRays the right of first refusal to match such bid, but the contract language does not limit Eliza Jennings' review of bids to price comparisons, and does not indicate that such bids must be for three-year terms. Moreover, Eliza Jennings asserted, because HealthRays was given a right of first refusal and refused to match the thirty-day termination provision, Eliza Jennings was permitted to enter into a new agreement with a different provider. Lo-Med also moved for summary judgment on the complaint and maintained that Eliza Jennings breached the agreement as it provided for an initial four-year term and two automatic three-year extensions, and according to Lo-Med, Eliza Jennings could not terminate the agreement during these periods without cause. In any event, Lo-Med asserted, it exercised the right of first refusal and agreed to all terms of the PMG bid except the thirty day termination provision. Further, Lo-Med maintained that Eliza Jennings had no authority to terminate the contract because it was not current in its payments, and was over sixty days in arrears "for at least one of the facilities."
 {¶ 11} Lo-Med also moved for summary judgment on Eliza Jennings' counterclaim and asserted that its pricing was at the median price as required by the contract. *Page 7 
 {¶ 12} The trial court granted Lo-Med's motion for summary judgment, later explaining that the "parties had an obligation to exercise a renewal of said contract for a period of three years [and] Eliza Jennings refused to renew the contract[.]"
 {¶ 13} The matter proceeded to trial on the issue of Lo-Med's damages. Following trial, the lower court determined that Lo-Med failed to prove its damages because, inter alia: Lo-Med's damages were based on a price per drug analysis and the parties had agreed to a price per diem cost; Lo-Med's calculations were based on an estimate of all sales to defendant's patients but the agreement actually required HealthRays to bill private pay insurers and Medicaid patients to the responsible third parties; and Lo-Med also offered evidence from other Eliza Jennings' facilities which were not parties to this case. Lo-Med appeals and asserts that the trial court erred in concluding that it failed to prove its damages with reasonable certainty. Eliza Jennings cross-appeals and asserts that the trial court erred in concluding that it breached the contract.
 {¶ 14} For the sake of convenience, we shall address Eliza Jennings' cross-appeal first.
 {¶ 15} In order to establish a cause of action for breach of contract, a plaintiff must demonstrate by a preponderance of the evidence that (1) a contract existed, (2) the plaintiff fulfilled his obligations, (3) the defendant failed to fulfill his obligations, and (4) damages resulted from this failure. Lawrence v. Lorain Cty. Community College (1998),127 Ohio App.3d 546, 548-49, 713 N.E.2d 478. *Page 8 
 {¶ 16} As an initial matter, we note that interpretation of a contract is a matter of law which is subject to a de novo standard of review.Latina v. Woodpath Development Co. (1991), 57 Ohio St.3d 212, 214,567 N.E.2d 262; Hartley v. Brown Publishing Co., Madison App. No. CA2005-03-009, 2000-Ohio-999.
 {¶ 17} We further note that in construing any written instrument, the primary objective is to ascertain the intent of the parties, and the general rule is that contracts should be construed so as to give effect to the intention of the parties. Aultman Hosp. Assn. v. Community Mut.Ins. Co. (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920. Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.Shifrin v. Forest City Enterprises, 64 Ohio St.3d 635, 638,1992-Ohio-28, 597 N.E.2d 499. The court must read words and phrases in context and apply the rules of grammar and common usage. Keller v.Foster Wheel Energy Corp., 163 Ohio App. 3d 325, 2005-Ohio-4821,837 N.E.2d 859. The rules of grammar require "dependent clauses [to] modify some part of the main clause." Id., citing Bryan Chamber of Commerce v.Bd. of Tax Appeals (1966), 5 Ohio App.2d 195, 214 N.E.2d 812. See, also,Carter v. Youngstown (1946), 146 Ohio St. 203, 209, 65 N.E.2d 63
("referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent."). Other principles include "expressio unius est exclusio alterius" or the inclusion of one or more things of a class implies the exclusion of all *Page 9 
others not expressed. See Uram v. Uram (1989), 65 Ohio App.3d 96, at 98,582 N.E.2d 1060. Moreover, contracts must be interpreted in a way that renders all provisions meaningful and not mere surplusage.Sherwin-Williams Co. v. Travelers Casualty Surety Co., Cuyahoga App. No. 82867, 2003-Ohio-6039.
 {¶ 18} With regard to the law pertaining to rights of first refusal, we note that a right of first refusal constitutes a promise to present offers made by third parties to the promisee in order to afford the promisee the opportunity to match the offer. Latina v. WoodpathDevelopment Co. (1991), 57 Ohio St.3d 212, 567 N.E.2d 262.
 {¶ 19} It is axiomatic that a "seller is not entitled to reject materially different offers, only materially inferior ones; in order to prevail, the rightholder need not submit an identical offer, only an equally desirable one." Id. To constitute a similar offer the seller need merely receive an offer from the holder of a right of first refusal that is "at least as favorable" as the third party offer. Id. Where the holder of the right of first refusal cannot meet the exact terms and conditions of the third person's offer, minor variations which obviously constitute no substantial departure should be allowed. Davis v.Iofredo (1998), 127 Ohio App.3d 367, 713 N.E.2d 26.
 {¶ 20} In this matter, Lo-Med maintained that Eliza Jennings breached the agreement as it provided for an initial four-year term and two automatic three-year extensions, and Eliza Jennings could not terminate the agreement during these periods without cause. This interpretation of the contract is not supportable, however, as the Agreement provided for an "Initial Term" of four years, two *Page 10 
additional three-year "Extension Periods," plus an additional three year automatic extension. The Agreement further stated:
 {¶ 21} "At the end of each three (3) year period, the contract extension will be reviewed to ensure that it meets prudent buyer standards, which includes, but is not limited to, the pricing set forth in Section 3.1. At such time, the FACILITY shall have the right to seek and review bids for service from other pharmacies * * *." (Emphasis added).
 {¶ 22} This language clearly and plainly permitted Eliza Jennings to seek and review other bids at the end of each of the periods, including the Initial Term, the Extension Periods and the automatic renewals, in accordance with the common and ordinary meaning of the words of the provision. Moreover, the clauses pertaining to the automatic extensions do not modify the section pertaining to bids and indeed, the bid section would be rendered meaningless under Lo-Med's construction as it would offer no real opportunity to obtain bids.
 {¶ 23} Lo-Med further asserted that it exercised the right of first refusal and agreed to all terms of the PMG bid except the thirty day termination provision. The right of first refusal provided an opportunity to match the PMG bid and the rejection of the thirty day termination provision does not constitute a minor deviation from PMG's bid. The rejection of the termination provision rendered HealthRay's offer less desirable and materially inferior. Eliza Jennings was therefore not required to accept it and could enter into an agreement with PMG. Moreover, as to Lo-Med's *Page 11 
contention that the PMG bid is unacceptable because the Agreement establishes that "any new service agreement shall be no less than three (3) years in length," we note that this section of the Agreement pertains to the Extension Periods and does not modify the provision pertaining to bids.
 {¶ 24} Finally, Lo-Med maintained that Eliza Jennings had no authority to terminate the contract because it was not current in its payments, and was over sixty days in arrears "for at least one of the facilities." We note, however, that this language does not modify the bid provision, but rather, this phrase refers to the last antecedent, i.e., the automatic extensions following the Extension Periods. Further, Lo-Med's evidence as to "at least one of the facilities" failed to establish that Eliza Jennings Home, the party to the Agreement, was not current in its payments, and was therefore insufficient to create a genuine issue of material fact as to whether Eliza Jennings could terminate the Agreement.
 {¶ 25} In accordance with the foregoing, the cross-appeal is well-taken. Eliza Jennings was entitled to judgment as a matter of law. The judgment of the trial court which determined that Eliza Jennings breached the Agreement is hereby reversed.
 {¶ 26} In light of our holding that Eliza Jennings did not breach the agreement, Lo-Med's appeal, in which it challenges the trial court's determination that it failed to prove its damages for the breach, is moot. We therefore will not address it. See App. R. 12(A)(1)(c).
 It is ordered that appellant recover from appellee costs herein taxed. *Page 12 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ANTHONY O. CALABRESE, JR., P.J., and KENNETH A. ROCCO, J., CONCUR *Page 1