[Cite as *491 N. Park Real Estate, L.L.C. v. Spice Partners, L.L.C.*, 2014-Ohio-5164.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| 491 North Park Real Estate LLC et al., | : | |
| Plaintiffs-Appellees, | : | |
| v. | : | No. 14AP-304 |
| | | (C.P.C. No. 09CVH-09-13915) |
| Spice Partners, LLC et al., | : | |
| | | (REGULAR CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on November 20, 2014

*Law Offices of James P. Connors*, and *James P. Connors*, for appellees.

*Robol Law Office LLC* and *Richard T. Robol; Dudley Law LTD,* and *Michelle R. Dudley*, for appellants.

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} Defendants-appellants, Spice Partners, LLC et al. ("Spice Partners"), appeal the judgment of the Franklin County Court of Common Pleas. For the reasons set forth below, we affirm the rulings of the trial court.

{¶ 2} Spice Partners presents seven assignments of error for our consideration:

1. The trial court erred in denying Spice's request for declaratory judgment that neither Spice nor Mr. Starker owed any money under any of the agreements entered into with Plaintiffs.

2. The trial court erred in denying Spice and Starker's request for indemnification.

3. The trial court erred in ruling that 491 N Park Real Estate did not breach its lease with Spice and Starker.

4. The trial court erred in ruling that 491 N Park Real Estate and Corso were not trespassers.

5. The trial court erred in awarding as damages to 491 N Park Real Estate the $118,000 it paid to settle claims of its own wrongdoing brought by the bank.

6. The trial court erred in awarding as damages to 491 N Park the amount of sales taxes accrued under its liquor license.

7. The trial court erred when it found that rebranding the Spice restaurant and bar into a Massey's restaurant and bar would not have been a permissible use of the leased premises.

{¶ 3} Plaintiff-appellee, 491 North Park Real Estate LLC ("491 North Park"), has filed a motion to dismiss the appeal of Spice Partners. 491 North Park's motion is denied. The final appealable order in this case was issued March 20, 2014 and Spice Partners timely appealed. The December 28, 2012 findings of fact and conclusions of law issued by the trial court did not resolve all issues in the case and was not a final appealable order. The trial court explicitly left open issues for the magistrate's resolution, stating "[i]ssues relating to a calculation of damages pursuant to this order shall be referred to the Court's magistrate for resolution." (R. 270, Conclusions of Law, at 24.)

{¶ 4} In 2008, 491 North Park operated a bar known as "Spice" in a building located at 491 North Park Street in Columbus, Ohio. 491 North Park was owned and controlled by Christopher J. Corso. Corso owned and controlled two other companies that operated two nearby bars known as "Sugar" and "Park Street Patio." In 2008, Corso and defendant-appellant, Thomas C. Starker, agreed to a transaction in which Starker and Corso would hold an ownership interest in the real estate of the Spice location; Starker would operate Spice as an upscale dining facility/bar lounge; and Corso would continue operating Sugar and Park Street Patio. Spice was to be rebranded as the Spice Gastro Lounge.

{¶ 5} Problems occurred with the sale and transfer of the liquor license for the premises. Over $20,000 was due in delinquent sales taxes incurred by Corso and 491 North Park. On February 6, 2009, 491 North Park paid the tax claim in the amount of $20,785.09. Corso, at that time, also paid an additional $34,974.23 for unpaid sales taxes and penalties incurred by Spice Partners and Starker. At that point in time, the liquor permit was in good standing and not subject to any penalty or suspension; however, the transfer of the permit never took place. Because of the formerly unpaid sales taxes, the liquor license was invalid and was subject to immediate suspension. However, such a suspension never occurred.

{¶ 6} Approximately three months after the initial opening of Spice Gastro Lounge, the chef quit and the quality of the food went into decline. Suppliers for day-to-day operations went unpaid, as did sales taxes, real estate taxes, insurance premiums, and payroll taxes. Even absent paying the majority of its expenses, Spice Partners lost approximately $30,000 for both the first and second quarter of 2009. It became clear in May-June 2009 that Spice was going to fail.

{¶ 7} By August 2009, Starker's indebtedness was in the area of $1,000,000 which had been incurred in less than 12 months. Starker began negotiations with Massey's Pizza to convert Spice into a pizza lounge. However, these negotiations were all made before Starker submitted any financial disclosure documents to Massey's Pizza and due diligence could be pursued.

{¶ 8} On August 10, 2009, Corso gave notice to Spice Partners and Starker that the lease was effectively terminated. The property was boarded up that same day.

{¶ 9} Turning to the legal issues presented by the assignments of error, judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *Melvin v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 10AP-975, 2011-Ohio-3317, ¶ 34; *See C. E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978). A trial court's findings of fact are presumed correct, and "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to decide." *Eagle Land Title Agency, Inc. v. Affiliated Mtge. Co.*, 10th Dist. No. 95APG12-1617 (June 27, 1996), citing *State v. Thomas*, 70 Ohio St.2d 79 (1982). This presumption arises because the trial judge "is best

able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).  The trier of fact is free to believe or disbelieve all or any of the testimony.  *State v. J.L.S.*, 10th Dist. No. 08AP-33, 2009-Ohio-1547.  "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."  *Seasons Coal Co.*, at 80, fn. 3, citing 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-92 (1978).

{¶ 10} Contract interpretation is a question of law, which receives de novo review on appeal.  *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995).  The terms of a contract are to be given their ordinary meaning unless manifest absurdity results or some other meaning is clearly evidenced from the face or overall content of the contract.  *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992).

> Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions. When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.

(Citations omitted.) *Id.*, citing *Aultman Hosp.  Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51 (1989), syllabus; *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987); and *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246 (1978).

{¶ 11} Material breach of a contract and possible damage awards are question of fact.  *O'Brien v. Ohio State Univ.*, 10th Dist. No. 06AP-946, 2007-Ohio-4833.  *Amerifirst Sav. Bank v. Krug*, 136 Ohio App.3d 468, 487 (2d Dist.1999) (determination of the amount of damages is within the discretion of the trial court, and will be sustained if it is supported by sufficient credible evidence and is not against the manifest weight of the evidence).

> The determination of whether a party's breach of a contract was a "material breach" is generally a question of fact. * * * The reasoning behind this principle is that to determine whether a party's breach was material requires, inter alia, an examination of the parties' injuries, whether and how much the injured parties would or could have been compensated, and whether the parties acted in good faith. * * * All of these inquiries turn on subjective facts.

*O'Brien* at 11. The terms of the various contracts and agreements in the case at bar are not unclear or ambiguous, therefore we examine if the trial court's determinations are against the manifest weight of the evidence.

{¶ 12} Spice Partners' first assignment of error argues the trial court erred in finding that the undisclosed, unpaid sales taxes that had accumulated before the closing did not nullify the various agreements to sell Spice Bar. The trial court found:

> 3. The delay in the payment of the post-closing discovered unpaid sales taxes did not terminate or postpone the legality or enforceability of the closing agreements.
>
> 4. By failing to timely assert any objections to payment of the undisclosed sales tax lien Spice Partners LLC and Starker waived their right to subsequently assert that the delayed payment in effect terminated the entire agreement which is the subject of this action.

(R. 270, Conclusions of Law, at 19.) These findings are based on a finding that Corso did not know about the unpaid sales taxes until after the October 20, 2008 closing date and that his efforts afterward were appropriate. The efforts consumed several months before the resolution of the sales tax issue was completed. (R. 270, Conclusions of Law, at 11.)

{¶ 13} Spice Partners argues that the evidence does not support the trial court's finding. There is evidence that shows 491 North Park was aware of a sales tax issue before October 2008, but the testimony shows that Corso and his companies believed that the sales tax deficiency was in error and they were contesting the claim. The liquor license attorneys for Corso and the bank testified that these unpaid sales taxes would prevent the sale of the liquor license. The trial court found that, "[b]ecause Corso was unaware of the existence of the sales tax lien at the time of the closing there was no intentional

misrepresentation of a material fact attributable to him." (R. 270, Conclusions of Law, at 13.)

{¶ 14} Once the outstanding sales tax on the liquor license was paid in February 2009, the transfer became the responsibility of Spice Partners.  "Under the terms of the Asset Purchase Agreement coupled with the payment of the February 6 sales taxes, Spice Partners LLC and Starker were solely responsible for transferring the liquor license from 491 N. Park to Spice Partners LLC."  (R. 270, Conclusions of Law, at 13.)  The transfer could not take place until Spice Partners paid their sales tax deficiency which was only accomplished by Corso paying Spice Partners' tax liability.  We find there is competent, credible evidence supporting the trial court's conclusion that after the February 6, 2009 payment of the sales taxes deficiency, the responsibility for the transfer of the liquor license rested with Starker and Spice Partners.  Therefore, the agreements to sell Spice were not nullified by this issue.

{¶ 15} The first assignment of error is overruled.

{¶ 16} The second assignment of error asserts that the request of Spice Partners and Starker for indemnification should have been granted.  Spice Partners argues that Corso and 491 North Park violated Section 11(b) of the Asset Purchase Agreement which required Spice Partners to be indemnified against liabilities, losses, and damages resulting from inaccurate representations material to the agreement.

{¶ 17} It is clear that Starker and Spice Partners conducted business unimpeded by the non-transfer of the liquor licenses and did not suffer any losses as a result of Corso's delay in paying his sales taxes when due.  There is competent and credible evidence to support the trial court's conclusion that, before the resolution of this sales tax issue, Starker continued to conduct business.  The evidence also shows that throughout his ownership, Starker was never denied utilization of a liquor license.  (R. 270, Conclusions of Law, at 13.)

{¶ 18} The second assignment of error is overruled.

{¶ 19} Spice Partners and Starker argue in the third and fourth assignments of error that Corso and 491 North Park had no right to a self-help eviction and committed a material breach of the lease agreement.  Spice Partners argues that on August 9, 2009, the last day they held the property, 491 North Park had not sent a notice for the failure to pay

rent on August 5 or notice of a failure to perform some other obligation under the lease. Without this notice and the ten days to cure, and because Spice Partners had not abandoned the property, they argue that self-help eviction could not take place and therefore Corso was a trespasser.

{¶ 20} The lease contains a provision to allow for self-help eviction upon the fulfilling of certain conditions. Such self-help provisions are lawful in commercial leases without judicial process and not against public policy when parties voluntarily enter into a lease with knowledge of self-help provisions. *See Northfield Park Assoc. v. Northeast Ohio Harness*, 36 Ohio App.3d 14 (8th Dist.1987) paragraph three of the syllabus (A provision in a commercial lease allowing a landlord to repossess by self-help and without judicial process is not against public policy, where the repossession takes place without a breach of the peace, especially where the parties voluntarily enter into the lease with knowledge of the self-help provision).

{¶ 21} One of the conditions that allows for the landlord to exercise a self-help eviction requires that written notice be given of a lessees' failure to perform any covenants, agreements, or conditions of the lease and allow 30 days to cure. (R. 2, Complaint, exhibit A.) Corso testified that he directed his office to hand deliver an email printout from his attorney to Starker and the Spice facility detailing many defaults in the lease agreement and other agreements. (Tr. 61-64.) There was also a forbearance agreement drafted and oral agreement reached in early June 2009 in which Corso, and the Commerce National Bank would forbear foreclosing on Spice Partners if certain conditions were met. (Tr. 67-71.)

{¶ 22} It is clear that Spice Partners and Starker committed many material breaches of the lease, but when Corso changed the locks on August 10, notice of the termination of the lease was not given beforehand. The trial court found the failure to "strictly adhere to the notice of default provision was not a material breach of the lease or related agreements so as to excuse Spice Partners LLC and Starker from performing under the lease." (R. 270, Conclusions of Law, at 20.) Material breaches are reviewed under a manifest weight of the evidence standard. *O'Brien* at 11. We agree with the trial court that the failure of 491 North Park and Corso to give proper notice of the termination of the lease did not discharge the obligations of Spice Partners and Starker. "A breach of

one of several terms in a contract does not discharge the obligations of the parties to the contract, unless performance of that term is essential to the purpose of the agreement." *Kersh v. Montgomery Dev. Ctr., Ohio Dept. of Mental Retardation and Dev. Disabilities,* 35 Ohio App.3d 61 (10th Dist.1987), citing *Boehl v. Maidens,* 102 Ohio App. 211 (1st Dist.1956).

{¶ 23} Spice Partners and Starker were well aware of their numerous and obvious defaults of the lease agreement. There is evidence that written notice was given by lessor 491 North Park through Corso in March 2009 and again at the June 3, 2009 forbearance meeting. We cannot say that proper notice was not given of the defaults in the lease. These defaults were never cured and 491 North Park and Corso could lawfully exercise the self-help eviction clause of the lease as there was no requirement to state when such eviction would take place after lessees failed to cure any defaults within 30 days.

{¶ 24} The third and fourth assignments of error are overruled.

{¶ 25} The fifth and six assignments of error argue that the trial court's awarding of $118,000 in damages to cover the superior creditor position of the Commerce National bank and $34,974.23 paid by Corso personally to cover Spice Partners' unpaid sales tax liability was in error.

{¶ 26} The $118,000 was the amount paid by Corso and 491 North Park to settle all claims with Commerce National Bank who had a superior creditor position. This cost was necessary to re-lease the premises and continue business at that location. The $34,974.23 is the amount that Corso personally paid in February 2009 to cover Spice Partners' portion of the unpaid sales taxes so that the liquor license could be transferred. There is competent, credible evidence in the record to support these damage awards by the trial court.

{¶ 27} The fifth and sixth assignments of error are overruled.

{¶ 28} The seventh assignment of error argues the trial court erred in finding that rebranding Spice Bar into a Massey's Pizza location was an impermissible use of the lease because it would not be a restaurant, lounge and nightclub as required by the lease. There is competent and credible evidence to support the trial court's conclusion. We note, as did the trial court, that if Massey's Pizza were made aware of Spice Partners' and Starker's financial plight, any credible effort to convert the location into a pizza shop would have

most certainly have evaporated.  There is credible evidence that Spice operated at a loss even with vendors, employees and sales taxes not being paid.

{¶ 29}  The seventh assignment of error is overruled.

{¶ 30}  Having overruled all seven assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

O'GRADY and LUPER SCHUSTER, JJ., concur.