[Cite as *Legacy Village Investors, L.L.C. v. Bravo Brio Restaurants, L.L.C.*, 2025-Ohio-964.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

LEGACY VILLAGE INVESTORS, LLC,  :

      Plaintiff-Appellee,  :

No. 113853

      v.  :

BRAVO BRIO RESTAURANTS, LLC,  :

      Defendant-Appellant.  :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 20, 2025

---

Civil Appeal from the Lyndhurst Municipal Court
Case No. 23CVG00738

---

### *Appearances:*

Gordon Rees Scully Mansukhani, LLP, Tyler Tarney, and J. Brady Hagan, *for appellant*.

Singerman, Mills, Desberg & Kauntz Co., L.P.A., and Michael R. Stavincky, *for appellee*.

ANITA LASTER MAYS, J.:

**{¶1}** Defendant-appellant Bravo Brio Restaurants, LLC ("Bravo") appeals the trial court's decision in favor of plaintiff-appellee Legacy Village Investors, LLC ("Legacy"), who filed a complaint for forcible entry and detainer. We affirm the trial court's decision.

## I.  Facts and Procedural History

{¶2} On April 12, 2023, Legacy filed a forcible entry and detainer complaint against Bravo.  In Legacy's complaint, it stated that Bravo entered into a written lease with Legacy on October 28, 2020, that was amended each year.  According to the complaint, Bravo defaulted on the rent by failing to pay or timely pay all of the rental obligations under the lease over the course of several years.  In Legacy's complaint, it stated that Legacy provided Bravo with formal notices of default under the lease on ten separate occasions between January 13, 2021, to March 15, 2023. On March 29, 2023, Legacy served Bravo a "Three-Day Notice to Leave the Premises."  Bravo did not vacate the premises.

{¶3} On April 5, 2023, Legacy terminated the lease with Bravo.  In Legacy's complaint, it demanded judgment against Bravo for possession and restitution of the premises; attorney fees, cost, and disbursements in accordance with the lease; and further relief the trial court decides is proper.

{¶4} After multiple pretrial proceedings, a trial was held before the magistrate on October 5, 2023.  On December 20, 2023, the magistrate issued its decision in favor of Legacy, finding that based on the testimony and exhibits introduced at trial, Bravo violated the terms of the lease.  The magistrate granted the forcible detainer and eviction.  On January 4, 2024, Bravo filed an objection to the magistrate's decision.

{¶5} On April 10, 2024, the Lyndhurst Municipal Court entered a judgment entry in favor of Legacy stating the following:

This matter came on for hearing for consideration this 10th day of April 2024 on the Defendant's Objections to the Magistrate's Decision, Brief in Response filed by the Plaintiff, and Defendant's Supplemental Objections to Magistrate's Decision. The original Complaint in Forcible Entry and Detainer was filed on April 12, 2023, the matter was heard on October 5, 2023, and a Magistrate's Decision was issued on December 20, 2023.

The Complaint concerned an eviction based on a commercial lease for a restaurant located in Legacy Village, a shopping center in the jurisdiction of the Lyndhurst Municipal Court. Upon an Independent Review of the exhibits and testimony pursuant Civ.R. 53(D)(4)(d), the Court overrules the Objections.

The magistrate correctly determined that "Rent", as defined by the terms of the lease, include late fees, therefore the Defendant was in breach.

The Court further finds that the Defendant's counterclaims are barred by Local Rule 19.4.1 which states, "Cases for Forcible Entry and Detainer shall not include claims or counterclaims for money damages: Claims for money damages shall be filed as separate civil actions and shall be assessed a separate filing fee. The Court shall hear each case separately." Moreover, the Defendant's counterclaims are specifically barred by the Lease. "Tenant shall not interpose any counterclaim of whatsoever nature or description, in any such proceeding."

It is therefore ordered, adjudged and decreed that the Forcible Detainer and Evictions is hereby granted.

IT IS SO ORDERED.

Judgment Entry 23CVG00738 (Apr. 10, 2024).

{¶6} Bravo filed this appeal and assigns seven errors for our review:

1.  The trial court erred in concluding that the late fees Legacy charged to Bravo under the subject lease were proper;

2.  The trial court erred in concluding that Bravo defaulted under the lease based on a misinterpretation of the term "Rent" expressly defined in the lease;

3. The trial court erred in not declaring Bravo's continued right to occupation of the premises, despite an established lack of default under the lease;

4. The trial court erred in concluding the alleged late payment of $3,751.95 in late fees, which Bravo timely paid, constituted a material breach of the lease that warranted forfeiture;

5. The trial court committed reversible error in refusing to address the equities of the case and ordering an inequitable forfeiture under the circumstances;

6. The trial court erred in concluding Legacy had not waived strict enforcement by forfeiture of timely payment of the fees under a misinterpretation of the lease non-waiver provision, and improperly refused to entertain Bravo's waiver defense on "jurisdictional" grounds; and

7. The trial court erroneously concluded the lease did not allow counterclaims, failing to recognize the counterclaims as established affirmative defenses and dismissing them under local rule inconsistent with prevailing Ohio law.

## II.   Standard of Review

{¶7} "We start with 'the basic premise that leases are contracts and are subject to the traditional rules of contract interpretation.'" *12100 Buckeye Ltd. v. Council for Economic Opportunities in Greater Cleveland*, 2021-Ohio-4517, ¶ 8 (8th Dist.), quoting *Mark-It Place Food, Inc., v. New Plan Excel Realty Trust, Inc.*, 2004-Ohio-411, ¶ 29 (4th Dist.). "To succeed on a breach-of-contract claim, the plaintiff must show that '(1) a contract existed, (2) the plaintiff fulfilled his obligations, (3) the defendant failed to fulfill his obligations, and (4) damages resulted from this failure.'" *Id.*, quoting *Kirkwood v. FSD Dev. Corp.*, 2012-Ohio-2922, ¶ 13 (8th Dist.).

**{¶8}** "The 'interpretation of a contract is a matter of law which is subject to a de novo standard of review.'" *Id.* at ¶ 9, quoting *Lo-Med Prescription Servs. v. Eliza Jennings Group*, 2007-Ohio-2112, ¶ 16 (8th Dist.). *See also Abrams v. Grenny Properties, L.L.C.*, 2016-Ohio-8303, ¶ 8 (8th Dist.) (We interpret the terms of the parties' lease de novo.). "De novo review encompasses an independent examination of the record and law without deference to the underlying decision." *Gateway Consultants Group, Inc. v. Premier Physicians Ctrs., Inc.*, 2017-Ohio-1443, ¶ 22 (8th Dist.), citing *Demeraski v. Bailey*, 2015-Ohio-2162, ¶ 11 (8th Dist.).

**{¶9}** However,

> [a]ppellate review of a mixed question of fact and law requires an appellate court to give deference to a trial court's factual findings if they are supported by competent, credible evidence, and to independently review whether the trial court properly applied the law to the facts.

*MRI Software, L.L.C. v. West Oaks Mall Florida, L.L.C.*, 2018-Ohio-2190, ¶ 10 (8th Dist.), citing *Troy Oaks Homes & Residential Club, Inc. v. Sokolowski*, 2016-Ohio-8427, ¶ 28 (11th Dist.).

**{¶10}** Further, "a trial court's decision to adopt a magistrate's decision is reviewed for an abuse of discretion." *AC Asset, L.L.C. v. Mitchell*, 2022-Ohio-1763, ¶ 26 (8th Dist.), citing *Kapadia v. Kapadia*, 2011-Ohio-2255, ¶ 7 (8th Dist.).

## III. Law and Analysis

**{¶11}** In Bravo's first assignment of error, it argues that the trial court erred in concluding that the late fees Legacy charged to Bravo under the subject lease were proper. In its brief, Bravo stated that Legacy improperly applied the

$3,751.95 in late fees. Bravo argues that under the lease, the rent could be paid without incurring a late fee if it was paid within five days. Bravo further argues that Legacy charged them late fees for the October 2022 rent that was received well within the five-day grace period. Bravo contends that Legacy did the same thing with the November 2022 and January 2023 rents that were received within the five-day grace period. Bravo also argues that, in accordance with the lease, late charges only apply the third time the rent is paid late in a given year. However, Legacy incorrectly charged Bravo a late fee in February 2022, which is only the second month of the year.

{¶12} According to Legacy, Bravo's arguments are misplaced because after the first eviction in 2021, Bravo was late on its rent payments 26 of 27 months, and it was more than five days late on the rent. Legacy argues that Bravo has had a running balance of late payments since April 2021, and the basis for the eviction were the charges owed and never paid from April 2021 through September 2022, not the months Bravo states.

{¶13} In Bravo's reply brief, it argues that the trial court found the $3,751.95 late charge in March 2022 was the only alleged default at issue. Bravo's arguments are misplaced. The trial court's decision did not state that the March 2022 late charge was the only alleged default at issue and acknowledged that the late fees were for the balance Legacy claimed was owed to them for multiple months of late rent where Bravo paid past the five days. The magistrate's decision that was adopted by the trial court, stated, in part:

The issues between the Parties began during the COVID-19 pandemic. The Defendant failed to open by December 29, 2020 and failed to pay rent for the months of January, February, and March 2021. On March 11, 2021, the Plaintiff, Legacy Village Investors, locked the doors and began eviction proceedings. The parties negotiated the issue and Bravo/Brio opened the restaurant in August of 2021.
. . .

In addition to the March 2, 2023 and March 15, 2023 Default Letters, which are the basis of the matter herein, the Plaintiff avers that the Defendant previously defaulted in February, March, June, July, and September 2022.

Magistrate's Decision.

{¶14} Legacy sent default letters to Bravo, which included the multiple late fees that had not been paid over the course of the lease agreement. In the lease agreement, under the "Fixed Rent" section, failure to pay rent will be subject to fees.  It states, in Section 4(e):

If Tenant shall fail to pay any installment of Fixed Rent, Percentage Rent, or any item of Additional Rent or other charges due hereunder (collectively "Rent") after the same becomes due and payable, such unpaid amounts shall bear interest from the due date thereof to the date of payment at a rate which shall be the lesser of (i) the prime rate of interest printed in The Wall Street Journal plus three percent (3%) or, (ii) the maximum rate permitted by law. In addition thereto, if Tenant shall fail to pay any installment of Rent within five (5) days after the same the same become due and payable two (2) times in any Lease Year, then Tenant shall also pay to Landlord a late payment service charge (herein referred to as "Late Charge") covering administrative and overhead expenses equal to the greater of (1) Fifty Dollars ($50.00) or (2) Five Cents ($.05) per each dollar so overdue. The provisions herein for the payment of interest or the Late Charge shall not be construed to represent interest income, but are intended to reimburse Landlord for its overhead and expense so incurred and shall not be construed to extend the date for payment of any sums required to be paid by Tenant hereunder or to relieve Tenant of its obligation to pay all such sums at the time or times herein stipulated.

{¶15} According to the record, the late fees Legacy assessed to Bravo were for multiple months of defaulting on the lease. At trial, the property accountant for Legacy testified that Bravo, since May 1, 2022, owed a balance through July 1, 2023, and Bravo was late on the rent 26 of 27 months, and more than five days late on 20 occasions.

{¶16} As we review the parties' claims, we note that the parties disagree on the applicable standard of review. Bravo contends that this dispute is a matter of an obligation under a contract, which requires us to review the trial court's legal findings de novo. Legacy, however, contends this matter involves the trial court's adoption of a magistrate's decision and a bench trial, which we review under a manifest weight standard of review.

{¶17} "A court's independent review encompasses an examination of the record including, but not limited to, the magistrate's decision, the filed objections, supplemental objections, and the applicable hearing transcript." *In re K.V.*, 2019-Ohio-5126, ¶ 13 (8th Dist.), citing *In re R.C.*, 2011-Ohio-4641, ¶ 12 (8th Dist.). "'The independent review requires the trial court to conduct a de novo review of the facts and an independent analysis of the issues to reach its own conclusions about the issues in the case.'" *In re H.R.K.*, 2012-Ohio-4054, ¶ 10 (8th Dist.), quoting *Radford v. Radford*, 2011-Ohio-6263, ¶ 13 (8th Dist.).

{¶18} "[O]n appeal from a bench trial we review the trial court's factual findings under the manifest weight standard of review, while the trial court's legal findings are reviewed de novo." *Sood v. Rivers*, 2024-Ohio-3064, ¶ 27 (11th Dist.),

quoting *Ultimate Salon & Spa, Inc. v. Legends Constr. Group*, 2019-Ohio-2506, ¶ 30 (11th Dist.). "Accordingly, following a bench trial, a reviewing court will generally uphold a trial court's judgment as long as the manifest weight of the evidence supports it — that is, as long as 'some' competent and credible evidence supports it." *Patel v. Strategic Group, L.L.C.*, 2020-Ohio-4990, at ¶ 20 (8th Dist.), quoting *MRI Software, L.L.C. v. W. Oaks Mall FL, L.L.C.*, 2018-Ohio-2190, ¶ 12 (8th Dist.), citing *Hamilton v. Ball*, 2014-Ohio-1118, ¶ 15 (4th Dist.).

{¶19} In this case, the magistrate's factual findings, later adopted by the trial court, were that the calculation and amount of late fees were proper. We do not find any evidence in the record to the contrary. As to the magistrate's factual findings that the late fees charged to Bravo by Legacy were correct, the weight given to the evidence and the credibility of the witnesses are primarily issues assessed by the trier of fact. "The reviewing court views the trial court's credibility determinations with due deference." *Patel* at ¶ 20, citing *MRI Software* at ¶ 12. There is evidence in the record that supports the correct calculation of late fees as Legacy has demonstrated that Bravo was late many times on the rent, past the five-day grace period. Therefore, the trial court did not err when it adopted the magistrate's decision.

{¶20} Therefore, Bravo's first assignment of error is overruled.

{¶21} In Bravo's second assignment of error, it argues that the trial court erred in concluding that Bravo defaulted under the lease based on a misinterpretation of the term "Rent" expressly defined in the lease. "[T]he interpretation of statutes and written contracts are questions of law subject to de

novo review." *Loury v. Westside Auto. Group*, 2022-Ohio-3673, ¶ 19, citing *State v. Straley*, 2014-Ohio-2139, ¶ 9 (statutory interpretation is a matter of law reviewed de novo); *Hyde Park Circle LLC v. Cincinnati*, 2016-Ohio-3130, ¶ 15 (1st Dist.) (the interpretation of contracts is reviewed de novo).

**{¶22}** Bravo's arguments are misplaced. The magistrate did not base its decision on the definition of rent; it concluded that Bravo defaulted under the lease based on Section 21(a)(i), which states:

> (a)     If, at any time after the Date of Delivery of Possession:
>
> (i) Tenant shall be in default in the payment of Rent or in the performance of any of the covenants, terms, conditions, provisions, rules, and regulations of this Lease, and Tenant shall fail to remedy such default within ten (10) days in the event the default is as to payment of Rent or within thirty (30) days after receipt of written notice thereof, if the default relates to matters other than the payment of Rent (but Tenant shall not be deemed in default if Tenant commences to remedy and defaults other than relate to payment of rent within said thirty (30) day period, and proceeds therewith with due diligence);
>
> . . .
>
> then, Landlord, in addition to all other remedies given to Landlord in law or in equity, may, by written notice to Tenant, terminate this Lease, or without termination of Lease re-enter the Premises by summary proceedings or otherwise, and, in any event, may dispossess the Tenant, it being the understanding and agreement of the parties that under no circumstances is this Lease to be an asset for Tenant's creditors by operation of law or otherwise.

Lease Agreement Section 21(a)(i), p. 32-33.

**{¶23}** After a review of the record, we have determined that Bravo was in default of the terms and conditions of the lease agreement. On March 2, 2023,

Legacy sent Bravo a default notice stating that, in accordance with the lease, Bravo had ten days to cure. On March 15, 2023, another default notice requesting $3,751.95 in late charges that had accrued was issued to Bravo. At trial, a witness for Bravo testified that Bravo sent a check to Legacy dated March 29, 2023, but it was not for the full amount owed to Legacy. According to the lease, Bravo defaulted under the agreement for not paying the entirety of the fees owed within 30 days.

{¶24} Therefore, Bravo's second assignment of error is overruled.

{¶25} In Bravo's third assignment of error, it argues that the trial court erred in not declaring Bravo's continued right to occupation of the premises, despite an established lack of default under the lease. In the second assignment of error, it was decided that Bravo defaulted under the lease. Thus, it did not have a continued right to occupy the premises. *Faqi v. Pattin*, 2020-Ohio-5115, ¶ 29 (6th Dist.) (The trial court does not abuse its discretion when it accepts the magistrate's findings that the appellant was in default under the lease, and the appellee's notice to vacate the premises was lawfully served when the evidence and law supports these findings.). The lease states, under Section 21(a)(i), that if Bravo defaults, Legacy "in addition to all other remedies given to" them "may by written notice to [Bravo] terminate this Lease" and "dispossess" Bravo.

{¶26} Therefore, Bravo's third assignment of error is overruled.

{¶27} In Bravo's fourth assignment of error, it argues that the trial court erred in concluding the alleged late payment of $3,751.95 in late fees, which Bravo timely paid, constituted a material breach of the lease that warranted forfeiture.

Bravo's arguments are not well taken. First, Bravo did not timely pay the entirety of the late fees. At trial, Bravo's witness, Jeffrey Sirolly ("Sirolly"), identified a check dated March 29, 2023, remitted to Legacy for the late fees that was overnighted and delivered on March 30, 2023. According to the trial record, the check was not for the full amount due and owing.

{¶28} Second, Bravo's arguments that it did not default under the lease are incorrect and has been previously decided in our review of the second assignment of error. Bravo further contends that its breach is not material, arguing that to warrant an eviction for breach of lease, the breach must be material. "Material breach of a contract and possible damage awards are question of fact." *491 N. Park Real Estate LLC v. Spice Partners, LLC*, 2014-Ohio-5164, ¶ 11 (10th Dist.), citing *O'Brien v. Ohio State Univ.*, 2007-Ohio-4833, ¶ 11 (10th Dist.). *See also Amerifirst Sav. Bank v. Krug*, 136 Ohio App.3d 468, 487 (2d Dist. 1999) (determination of the amount of damages is within the discretion of the trial court and will be sustained if it is supported by sufficient credible evidence and is not against the manifest weight of the evidence).

{¶29} "'A material breach occurs when a party violates a term essential to the purpose of the agreement.'" *Troy Oaks Homes & Residential Club, Inc.*, 2016-Ohio-8427, ¶ 50 (11th Dist.), quoting *Ohio Edn. Assn. v. Lopez*, 2010-Ohio-5079, ¶12 (10th Dist.). "'Mere nominal, trifling, or technical departures will not result in a breach of contract; slight departures, omissions, and inadvertencies should be disregarded.'" *Id.*, quoting *Tucker v. Young*, 2006-Ohio-1126, ¶25 (4th Dist.).

{¶30} The magistrate and, subsequently, the trial court determined that the breach was material and there is competent credible evidence to support their findings. The record shows that Bravo defaulted on the lease with Legacy by not paying the fees owed to Legacy for the late rent.

{¶31} Therefore, Bravo's fourth assignment of error is overruled.

{¶32} In Bravo's fifth assignment of error, it argues that the trial court committed reversible error in refusing to address the equities of the case and ordering an inequitable forfeiture under the circumstances. Bravo argues that the default had been cured under the lease by the time Legacy initiated its lawsuit. As previously stated, this is incorrect. Bravo's own witness, Sirolly, identified a check that was tendered to Legacy for the late fees, but the check was not for the full amount due. Secondly, Bravo argues that the trial court did not address the equitable factors in the case. Bravo's argument is not well taken.

{¶33} "In deciding whether to award a forfeiture or termination of a lease, a judge weighs the equities of the case and the interests of the parties in arriving at a decision, even where a party is (or was) in default of a lease." *Pepper Pike Properties L.P. v. Robert D. Wilson Co., L.P.A.*, 2002-Ohio-331, ¶ 16 (8th Dist.) "Equity abhors a forfeiture, and a judge is reviewed under an abuse of discretion standard in making a decision over whether a forfeiture is appropriate." *Id.* An abuse of discretion occurs when a court exercises its judgment "in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

**{¶34}** "[A] forfeiture clause in a lease must be strictly construed and that forfeiture should not be decreed in the absence of an express stipulation in the parties' lease agreement." *Pepper Pike* at ¶ 17. "But Ohio law clearly recognizes that forfeiture may be enforced on specified conditions." *Id*. "Thus, when parties enter into a commercial lease from equal bargaining positions and the lease expressly authorizes forfeiture upon the occurrence of default, the courts are bound to enforce such a provision." *Id*.

**{¶35}** Bravo is owned by Earl Enterprises. Earl Enterprises is an international company out of Florida that owns over 12 restaurant brands, including majority ownership of the Planet Hollywood Brand, hotels, and entertainment. In June 2020, Earl Enterprises acquired the Bravo chains for $30 million after Bravo went bankrupt in April 2020. Bravo's argument that it would suffer more harm than Legacy by terminating its lease is not supported by the record. Legacy and Bravo entered into the lease agreement from equal bargaining positions.

**{¶36}** Additionally, the magistrate did address Bravo's arguments that it would lose $12.5 million if the lease was terminated. The magistrate's decision stated: "The testimony by Attorney Sirolly was that Bravo/Brio would lose $12.5 million dollars if the lease was terminated, far above the statutory amount permitted by the Lyndhurst Municipal Court. Regardless, the amount is speculative and there was no evidence to substantiate the claim." Magistrate's

Decision. We agree that there is no inequitable forfeiture, and the trial court did not abuse its discretion.

{¶37} Therefore, Bravo's fifth assignment of error is overruled.

{¶38} In Bravo's sixth assignment of error, it argues that the trial court erred in concluding Legacy had not waived strict enforcement by forfeiture of timely payment of the fees under a misinterpretation of the lease nonwaiver provision and improperly refused to entertain Bravo's waiver defense on "jurisdictional" grounds. According to the record, at trial, Bravo maintained that the evidence submitted proved that Legacy waived strict adherence to payment of rent on the first of the month per Section 4(d), citing the notice of default letters that provided Bravo ten additional days to pay the outstanding rent. Bravo contends that repeat acceptance of the late rent was a waiver of strict adherence to timely payment.

{¶39} The issue of whether a "no waiver clause" has been waived by a parties' actions is a question of fact. *3637 Green Rd. Co. v. Specialized Component Sales Co.*, 2016-Ohio-5324, ¶ 23 (8th Dist.). "[O]n appeal from a bench trial we review the trial court's factual findings under the manifest weight standard of review . . ." *Sood,* 2024-Ohio-3064, at ¶ 27 (11th Dist.), quoting *Ultimate Salon & Spa, Inc.,* 2019-Ohio-2506, at ¶ 30 (11th Dist.). "Accordingly, following a bench trial, a reviewing court will generally uphold a trial court's judgment as long as the manifest weight of the evidence supports it — that is, as long as 'some' competent and credible evidence supports it." *Patel*, 2020-Ohio-4990, at ¶ 20 (8th Dist.),

quoting *MRI Software,* 2018-Ohio-2190, at ¶ 12 (8th Dist.), citing *Hamilton,* 2014-Ohio-1118, at ¶ 15 (4th Dist.).

{¶40} "As applied to contracts, waiver is a voluntary relinquishment of a known right." (Cleaned up.) *3637 Green Rd. Co.* at ¶ 23. "'Waiver assumes one has an opportunity to choose between either relinquishing or enforcing of the right.'" *Id.*, quoting *Chubb v. Ohio Bur. of Workers' Comp.*, 81 Ohio St.3d 275, 279 (1998). "The party asserting waiver must prove the waiving party's clear, unequivocal, decisive act." *Id.*, citing *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 2006-Ohio-3492, ¶ 28 (8th Dist.).

{¶41} Legacy argues that the "No Waiver" clause in the lease agreement precludes them from waiving strict performance. Section 27 of the lease agreement states:

> No failure by Landlord or Tenant to insist upon the strict performance of any term, covenant, agreement, provision, condition, or limitation of this Lease to be kept, observed or performed by the other, and no failure by Landlord or Tenant to exercise any right or remedy consequent upon a breach of any such term, covenant, agreement, provision, condition, or limitation of this Lease, shall constitute a waiver of any such breach or of any such terms, provisions, covenants, conditions, rules, and regulations shall be valid unless it shall be in writing signed by Landlord. No waiver by Landlord or forgiveness of performance by Landlord in respect to one (1) or more tenants of Legacy Village shall constitute a waiver or forgiveness of performance in favor of Tenant herein, or any other tenant.

{¶42} "Where the evidence establishes that the Lessor is aware of an alleged . . . breach thereof but regularly, and without protest, continues to accept rental checks, the lessor waives their rights to declare forfeiture for breach as a matter of

law." *Telecom Acquisition Corp. I v. Lucic Ents.*, 2012-Ohio-472, ¶ 20 (8th Dist.), citing *Quinn v. Cardinal Foods Inc.*, 20 Ohio App.3d 194, 196 (3d Dist. 1984).

**{¶43}** Legacy argues that it did not accept Bravo's rent without protest, but in fact issued many default notices that were never cured. The magistrate did not find that Legacy waived strict adherence to the payment of rent, and there is competent, credible evidence in the record that supports the court's decision including Legacy's many notices of default sent to Bravo.

**{¶44}** Therefore, Bravo's sixth assignment of error is overruled.

**{¶45}** In Bravo's seventh assignment of error, it argues that the trial court erroneously concluded the lease did not allow counterclaims, failing to recognize the counterclaims as established affirmative defenses and dismissing them under local rule inconsistent with prevailing Ohio law. When the trial court adopted the magistrate's decision, it stated, in part, in its decision:

> The Court further finds that the Defendant's counterclaims are barred by Local Rule 19.4.1. which state, "Cases for Forcible Entry and Detainer shall not include claims or counterclaims for money damages. Claims for money damages shall be filed as separate civil actions and shall be assessed a separate filing fee. The court shall hear each case separately." Moreover, the Defendant's counterclaims are specifically barred by the Lease. "Tenant shall not interpose any counterclaims of whatsoever nature or description, in any such proceeding."

Judgment Entry 23CVG00738 (Apr. 10, 2024).

**{¶46}** Bravo argues that the trial court erred by treating its counterclaims as monetary claims instead of affirmative defenses to Legacy's material breaches. In Bravo's answer to Legacy's complaint, it requested the trial court to enter a

judgment in favor of Bravo and award Bravo compensatory damages; statutory damages; punitive damages; and attorney fees, costs, interest, and expenses incurred in this action all related court actions.

**{¶47}** Bravo relies on our decision in *Berkut, Inc. v. Devolver Corp.*, 2024-Ohio-63, ¶ 17 (8th Dist.), which states, in part: "The trial court herein failed to recognize that there is a difference between asserting an affirmative claim for damages and raising an affirmative defense that serves to preclude recovery." However, the facts in *Berkut* are not analogous to the facts in our instant case. In *Berkut*, the appellee filed a claim for breach of contract against the appellant regarding a contract for a construction project. *Berkut* is not a forcible entry and detainer case.

**{¶48}** "[C]ourts are given latitude when following their own local rules and the enforcement of those rules is generally within the promulgating court's discretion." (Cleaned up.) *Wilson v. Wilson*, 2023-Ohio-1752, ¶ 24 (8th Dist.). "'Courts are vested with inherent power to establish procedural rules if they are reasonable and do not conflict with the organic law, or any valid statute.'" *Id.*, quoting *Cassidy v. Glossip*, 12 Ohio St.2d 17, 67 (1967). *See also* Ohio Constitution, Article IV, Section 5 ("Courts may adopt additional rules concerning local practice in their respective courts which are not inconsistent with the rules promulgated by the Supreme Court.").

**{¶49}** Bravo does not demonstrate that Local Rule 19.4.1 does not apply in this case or is inconsistent with the rules of the Supreme Court. Additionally, Bravo was found to be in breach of the contract, not Legacy.

**{¶50}** Therefore, Bravo's seventh assignment of error is overruled.

**{¶51}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MICHAEL JOHN RYAN, P.J., and
DEENA R. CALABRESE, J., CONCUR